E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JENA A. MACCABE (Cal. Bar No. 316637)
Assistant United States Attorney
Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5046
     Facsimile: (213) 894-0141
     E-mail:   jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-00149-FMO |
|       Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT DAEKUN CHO'S APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER OF DETENTION; DECLARATION OF JENA A. MACCABE; EXHIBIT |
|         v. | |
| DAEKUN CHO,<br>  aka "DK," | |
|       Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jena A. MacCabe, hereby files its opposition to defendant DAEKUN CHO's application for review/reconsideration of order of detention.

//

//

1    This opposition is based upon the attached memorandum of points

2 and authorities, the declaration of Jena A. MacCabe and exhibit

3 thereto, the files and records in this case, and such further

4 evidence and argument as the Court may permit.

5  Dated: May 5, 2023                    Respectfully submitted,

6                                        E. MARTIN ESTRADA
                                         United States Attorney
7
                                         MACK E. JENKINS
8                                        Assistant United States Attorney
                                         Chief, Criminal Division
9

10                                        _____/s/ Jena A. MacCabe_____
                                         JENA A. MACCABE
11                                        Assistant United States Attorney

12                                        Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

I.   INTRODUCTION...................................................1

II.  BACKGROUND.....................................................2

     A.   Defendant Extorted Two Business Owners from 2019
          through 2021 and Beat and Carjacked One of Them...........2

     B.   For Approximately Four Years, Defendant Extorted
          Another Victim, Whom Defendant Physically Assaulted
          This Year.................................................3

     C.   Defendant Is Suspected of Committing a Shooting, a
          Kidnapping, and Other Beatings Last Year..................4

     D.   The Court Detained Defendant Pending Trial................5

III. ARGUMENT.......................................................5

     A.   Legal Standards for Pretrial Detention....................5

     B.   Defendant Is a Risk of Danger and Non-Appearance..........6

          1.   Nature and Circumstances of the Offenses.............6

          2.   Weight of the Evidence...............................7

          3.   History and Characteristics of Defendant.............8

          4.   Nature and Seriousness of the Danger Posed by
               Defendant's Release..................................9

IV.  CONCLUSION....................................................10

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                   PAGE

**Cases**

United States v. Diaz-Hernandez,
  943 F.3d 1196 (9th Cir. 2019) ................................... 5, 6

United States v. Gebro,
  948 F.2d 1118 (9th Cir. 1991) ..................................... 5

United States v. Motamedi,
  767 F.2d 1403 (9th Cir. 1985) ..................................... 5

United States v. Townsend,
  897 F.2d 989 (9th Cir. 1990) ...................................... 9

United States v. Winsor,
  785 F.2d 755 (9th Cir. 1986) ...................................... 6

**Statutes**

18 U.S.C. § 1951................................................... 6, 9

18 U.S.C. § 2119(2)............................................... 6, 9

18 U.S.C. § 3142(e)(1).............................................. 5

18 U.S.C. § 3142(f)(2).............................................. 6

18 U.S.C. § 3142(g)................................................. 6

i

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3

For years before his arrest in this case, defendant DAEKUN CHO,

4 also known as "DK," ("defendant") had been extorting businesses and

5 individuals in the Koreatown, Los Angeles, area.  Specifically,

6 defendant was charging karaoke bars and doumi[1] drivers a monthly

7 "protection fee" (or unlawful debt).  To further his extortion

8 scheme, defendant committed a shooting, a carjacking, a kidnapping,

9 and other acts of physical violence.  Defendant made explicit

10 threatening statements to the doumi drivers and karaoke bar owners to

11 get them to pay a monthly fee.  Defendant also would restrict doumi

12 drivers from going to certain karaoke bars if they refused to pay the

13 monthly fee.  Since karaoke bars rely on the availability of doumis

14 for their businesses to survive, they would comply.

15

Defendant was charged with 32 counts of extortion, one count of

16 attempted extortion, and one count of carjacking.  (Indictment, Dkt.

17 14.)  At his initial appearance, defendant was detained pending

18 trial.  (Dkt. 7.)  He now applies for reconsideration of the Court's

19 order of pretrial detention based on the identification of sureties

20 with real property with $500,000 of equity.  (Dkt. 19.)  The Court

21 should deny defendant's application because there are no conditions

22 or combination of conditions that will reasonably assure the

23 appearance of defendant and the safety of any person or the

24 community.

25

26

27

28

---

[1] "Doumi" is a colloquial word for a hostess/companion that gets paid by the patron of the karaoke bar to accompany them.

**II.   BACKGROUND**

    **A.   Defendant Extorted Two Business Owners from 2019 through 2021 and Beat and Carjacked One of Them**

In or around July 2019, defendant approached Y.S., who along with his business partner J.L. operated a doumi driving company, while Y.S. was dropping off doumis at the parking lot for a karaoke bar.  (Compl. ¶ 25, Dkt. 1.)  Defendant told Y.S. that if he and J.L. wanted to continue to do business, then they must start paying defendant protection fees.  (Id.)  Y.S. and J.L. paid defendant around the 15th of every month.  (Id. ¶ 26.)

In 2021, defendant told Y.S. that he was raising the protection prices, but Y.S. refused to pay the price increase.  (Id. ¶ 27.)  On or about May 8, 2021, defendant and his accomplice pulled Y.S. out of Y.S.'s vehicle and assaulted Y.S. with baseball bats.  (Id.)  Defendant told his accomplice to "fuck him up."  (Id.)  Defendant and his accomplice broke Y.S.'s left arm and caused him to need stitches for a laceration to his lower left leg.  (Id.)  They also inflicted multiple lacerations, abrasions, and bruising on Y.S.'s legs and hips.  (Id.)  During the attack, Y.S. was screaming and yelling, "I will pay!  I will pay!" (Id. ¶ 30.)  After attacking Y.S., defendant stole Y.S.'s car.  (Id. ¶ 31.)

In or around July 2021, Y.S. and J.L. began receiving threatening messages from an unknown number.  (Id. ¶ 35.)  Those messages addressed the victims' family members, home addresses, and vehicle identification numbers.  (Id.)  The messages read, "I know where you live" and "see u."  (Id.)

2

1    After defendant's attack on Y.S. and after receiving the

2 threatening messages, Y.S. and J.L. closed their business.  (Id.

3 ¶ 37.)  J.L. also fled to another state with his family.  (Id. ¶ 35.)

4        **B.    For Approximately Four Years, Defendant Extorted Another Victim, Whom Defendant Physically Assaulted This Year**

5

6    For approximately four years, another victim ("S.S.") had been

7 paying defendant a monthly extortion fee.  (Compl. ¶ 48.)  After S.S.

8 decided to stop paying, on or about January 24, 2023, defendant

9 approached S.S., who was sitting in his car, and physically assaulted

10 him.  (Id. ¶¶ 48-49.)  Defendant also stole approximately $1,000 from

11 him.  (Id. ¶ 49.)

12    The following day, S.S. started paying defendant again out of

13 fear for his safety.  (Id. ¶ 50.)  Defendant had sent previous

14 messages referencing his assault of Y.S. as a means of coercion to

15 get the companies to comply.  (See id.)

16    On or about February 14, 2023, defendant messaged S.S. to

17 collect that month's extortion payment.  (Id. ¶ 52.)  Two days later,

18 law enforcement set up an operation to surveil the interaction.  (Id.

19 ¶ 54.)  That night, defendant messaged S.S. to meet him in a parking

20 garage for a karaoke bar.  (Id. ¶ 58.)  Law enforcement officers set

21 up surveillance in the parking garage and were spotted.  (Id. ¶ 60.)

22 Defendant messaged S.S. asking if S.S. had called the police.  (Id.)

23    Defendant then changed the location for the meeting two times.

24 (Id. ¶¶ 61-62.)  Law enforcement also spotted him driving by and

25 making a U-turn before telling S.S. to pay an intermediary instead,

26 which S.S. did.  (Id. ¶¶ 62-63, 65, 67.)  Defendant was trying to

27 conduct countersurveillance.  (Id. ¶ 64.)

28

1

2

### C.    Defendant Is Suspected of Committing a Shooting, a Kidnapping, and Other Beatings Last Year

3

4

5

Not only has defendant bragged about beating and carjacking Y.S. (Compl. ¶¶ 39, 50), but he also said that he kidnapped another doumi driver to "send a signal" to the company (id. ¶ 40).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Additionally, on or about July 15, 2022, defendant was involved in a shooting near a karaoke parking lot.  (Id. ¶ 41.)  At approximately 1:30 a.m., a victim pulled into the lot to drop off two doumis when defendant, who was wearing a mask covering the lower portion of his face, approached them.  (Id. ¶ 42.)  Defendant opened the door to the car and came halfway inside.  (Id. ¶ 43.)  Defendant appeared to have something in his waistband and told the driver that his company was not allowed to drop off doumis at that location and they had to leave.  (Id.)  Defendant then departed, and once the doumis got back into the car, all three individuals departed the parking lot as well.  (Id.)  As soon as the car pulled onto the street, the driver heard gunshots and glass breaking in the car.  (Id.)  He looked back and saw that one doumi was bleeding from a gunshot wound to the neck.  (Id.)  This incident is currently under investigation by the Los Angeles Police Department.  (Id.)

21

22

23

24

25

26

Finally, on or about the evening of September 17, 2022, D.E. was parked at a karaoke bar when defendant opened his door and asked, "What company do you work for?"  (Id. ¶¶ 45-46.)  Defendant then punched D.E. in the face, and D.E. fled the location in his car.  (Id. ¶ 46.)  D.E. went to the hospital and was treated for injuries to the left side of his face because of defendant.  (Id. ¶ 45.)

27

28

4

1          **D.    The Court Detained Defendant Pending Trial**

2          On March 16, 2023, defendant made his initial appearance.  (Dkt.

3    7.)  He declined to be interviewed by Pretrial Services and submitted

4    on detention.  On April 26, 2023, defendant filed the instant

5    application to reconsider the detention order.  (Dkt. 19.)  He

6    proposes bond from sureties, namely, relatives in this District, with

7    real property with $500,000 of equity.  (Id.)

8    **III.  ARGUMENT**

9          Defendant's application for reconsideration of pretrial

10   detention should be denied because he is a danger to the community

11   and a risk of non-appearance.

12         **A.    Legal Standards for Pretrial Detention**

13         A defendant must be detained pending trial where "no condition

14   or combination of conditions will reasonably assure the appearance of

15   the person as required and the safety of any other person and the

16   community."  18 U.S.C. § 3142(e)(1).  Detention is thus appropriate

17   where a defendant is either a danger to the community or a flight

18   risk; it is not necessary to prove both.  <u>United States v. Motamedi</u>,

19   767 F.2d 1403, 1406 (9th Cir. 1985).  "[T]he government bears the

20   burden of showing by a preponderance of the evidence that the

21   defendant poses a flight risk, and by clear and convincing evidence

22   that the defendant poses a danger to the community."  <u>United States</u>

23   <u>v. Gebro</u>, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing <u>Motamedi</u>, 767

24   F.2d at 1406-07).

25         Categorical grants or denials of bail, untethered from an

26   individualized determination, are impermissible.  <u>United States v.</u>

27   <u>Diaz-Hernandez</u>, 943 F.3d 1196, 1199 (9th Cir. 2019).  That is because

28   "the Bail Reform Act mandates an individualized evaluation guided by

1   the factors articulated in § 3142(g)."  Id.  Those factors are:

2        (1)  the nature and circumstances of the offense charged;

3        (2)  the weight of the evidence against the defendant;

4        (3)  the defendant's character, physical and mental condition,
          family and community ties, past conduct, history relating
5             to drug or alcohol abuse, criminal history; and

6        (4)  the nature and seriousness of the danger to any person or
          to the community that would be posed by the defendant's
7             release.  18 U.S.C. § 3142(g).

8

9   United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (per

10  curiam) (citation omitted).  Consideration of non-statutory factors

11  is disfavored.  Diaz-Hernandez, 943 F.3d at 1199.

12       Pursuant to 18 U.S.C. § 3142(f)(2), a detention hearing may be

13  reopened "if the judicial officer finds that information exists that

14  was not known to the movant at the time of the hearing and that has a

15  material bearing on the issue whether there are conditions of release

16  that will reasonably assure the appearance of such person as required

17  and the safety of any other person and the community."

18       **B.    Defendant Is a Risk of Danger and Non-Appearance**

19       For years, defendant has been endangering victims in Koreatown

20  and has tried to evade detection.  When he was arrested in this case,

21  he further demonstrated his risk of danger and non-appearance.

22            1.   Nature and Circumstances of the Offenses

23       The nature and circumstances of defendant's offenses

24  unequivocally weigh in favor of detention.

25       Defendant faces a statutory maximum of 20 years for each of the

26  33 extortion and attempted extortion counts, see 18 U.S.C. § 1951,

27  and 25 years for the carjacking count, see 18 U.S.C. § 2119(2).  That

28  sentencing exposure reflects the seriousness of defendant's offenses.

1    Moreover, defendant's specific conduct in this case is alarming.

2  By way of example, after extorting two business owners in Koreatown

3  for over a year, defendant demanded higher payments.  After one of

4  the business owners refused, defendant and his accomplice pulled him

5  from his car and assaulted him with baseball bats.  Defendant told

6  his accomplice to "fuck [the victim] up."  They broke the victim's

7  left arm and caused him to need stitches for a laceration to his

8  lower left leg.  They also inflicted multiple lacerations, abrasions,

9  and bruising on his legs and hips.  They violently attacked the

10  victim while he yelled, "I will pay!  I will pay!"  They then stole

11  the victim's car.

12    In February of this year, while trying to collect an extortion

13  payment from a victim whom defendant had physically assaulted and

14  stolen $1,000 from the previous month, defendant showed his concern

15  about law enforcement detection.  Specifically, defendant asked the

16  victim whether he had called the police on defendant, engaged in

17  countersurveillance in driving around and changing the meeting

18  location, and ultimately instructed the victim to use an intermediary

19  to make the extortion payment.

20    In sum, the nature and circumstances of defendant's offenses

21  demonstrate that he is a risk of both danger and non-appearance.

22         2.    Weight of the Evidence

23    The evidence that defendant committed the charged offenses is

24  overwhelming and cannot be ignored in assessing defendant's risk of

25  danger and non-appearance in this case.

26    In addition to the multiple victims who have recounted

27  defendant's crimes against them and other witnesses' statements, law

28  enforcement has video of defendant committing at least the carjacking

1  crime.  (See Compl. ¶ 33.)  Law enforcement further has messages that

2  defendant sent to his victims (id. ¶¶ 35, 67), skeleton masks seized

3  from defendant's house like the mask that defendant wore to attack a

4  victim (id. ¶ 33; Ex. 1 (photograph of items seized from defendant's

5  property); see also Compl. ¶ 42 (another victim reported that

6  defendant wore a mask during a shooting incident)), photographs

7  corresponding with injuries that defendant inflicted on one of his

8  victims (Compl. ¶ 33), cell-site data corresponding with defendant's

9  movements including during his attempted extortion (id. ¶¶ 56-57, 59,

10  61-63, 66), and records of the extortion payments (id. ¶¶ 26, 48).

11              3.   History and Characteristics of Defendant

12      Defendant's history and characteristics also favor detention.

13      Defendant's possession of three firearms, as well as a

14  suppressor, while engaged in a violent extortion scheme, supports his

15  detention based on danger.  (See Ex. 1 (photograph of weapons and

16  other items seized from defendant's property when he was arrested).)

17  Further, defendant is suspected of being involved in a shooting.  In

18  July of last year, a victim reported that defendant approached his

19  car as he tried to drop off two doumis at a karaoke bar.  According

20  to the victim, defendant appeared to have something in his waistband

21  and told him that he was not allowed to drop off doumis at that

22  location and had to leave.  As they left, one of the doumis was shot

23  in the neck.

24      The Pretrial Services Report from defendant's initial appearance

25  also supports the conclusion that defendant is a risk of non-

26  appearance.  According to that report, when law enforcement ordered

27  defendant to come out of his house, defendant refused and began a

28  five-to-ten-minute standoff.  During the standoff, defendant tried to

8

1   escape from a bathroom window but repositioned himself in the house

2   when he saw law enforcement outside.

3       In addition, defendant faces a statutory maximum of 20 years for

4   each of the 33 extortion and attempted extortion counts, see 18

5   U.S.C. § 1951, and 25 years for the carjacking count, see 18 U.S.C.

6   § 2119(2).  The possibility of a lengthy prison sentence may motivate

7   defendant to not appear for future court hearings.  See United States

8   v. Townsend, 897 F.2d 989, 994-95 (9th Cir. 1990) (holding that the

9   district court properly considered "penalties possible under the

10  present indictment" as providing an "incentive to consider flight,"

11  and noting that electronic monitoring cannot assure prevention of

12  non-appearance).

13              4.    Nature and Seriousness of the Danger Posed by
                      Defendant's Release

14

15      For years, defendant has used violence to extort multiple

16  victims and strangle the karaoke industry in Koreatown.  He is not

17  only a risk of danger to the community but has acted on his

18  dangerousness time and again.  Defendant proposes conditions of

19  release that include bond from sureties with real property with

20  $500,000 of equity.  Even if the Court accepted that proposal as

21  mitigating the risk of non-appearance, significant bond resources,

22  including property, do nothing to eliminate the risk of danger to the

23  community.  See Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984

24  U.S.C.A.N. 3182, 3198-99 (n.60) (Congress finding that "a defendant

25  who is a danger to the community remains dangerous even if he has

26  posted a substantial money bond").

27

28

1    **IV.**   **CONCLUSION**

2        For the foregoing reasons, the government respectfully requests

3    that this Court deny defendant's application for release.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JENA A. MACCABE**

I, Jena A. MacCabe, declare as follows:

1.    I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California.  I am the attorney representing the government in this case.

2.    Attached hereto as Exhibit 1 is a photograph of some items seized during the searches of defendant's residence, vehicles, and person on March 16, 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on May 5, 2023.

*/s/ Jena A. MacCabe*

JENA A. MACCABE

11

# EXHIBIT 1

