1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4  UNITED STATES OF AMERICA,      ) Case No. LA CR 23-00149-FMO
                                  )
5             Plaintiff,          )
                                  )
6  vs.                           ) Los Angeles, California
                                  )
7  DAEKUN CHO,                   ) Monday, May 8, 2023
                                  )
8             Defendant.          ) (1:38 p.m. to 2:06 p.m.)
9  _____)

10              TRANSCRIPT OF DETENTION HEARING
             BEFORE THE HONORABLE MICHAEL R. WILNER
11               UNITED STATES MAGISTRATE JUDGE

12
   Appearances:              See next page.
13
   Court Reporter:           Recorded; CourtSmart
14
   Courtroom Deputy:         James Munoz
15
   Transcribed by:           Jordan Keilty
16                            Echo Reporting, Inc.
                              9711 Cactus Street, Suite B
17                            Lakeside, California 92040
                              (858) 453-7590
18

19

20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

2

1   APPEARANCES:

2   For the Plaintiff:          JENA MACCABE, ESQ.
                                Office of the United States
3                                 Attorney
                                Violent and Organized Crime
4                                 Section
                                312 North Spring Street
5                               Suite 1200
                                Los Angeles, California 90012
6                               (213) 894-7413

7   For the Defendant:          ANTHONY SOLIS, ESQ.
                                Anthony M. Solis, APC
8                               23679 Calabasas Road, PMB 412
                                Calabasas, California 91302
9                               (213) 489-5880

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1      Los Angeles, California, Monday, May 8, 2023 1:38 p.m.

2                           --o0o--

3                     (Call to order.)

4           THE CLERK:  Calling case CR 23-149, United States

5    of America versus Daekun Cho.

6           Appearances, please.

7           MS. MACCABE:  Good afternoon, your Honor.  Jena

8    MacCabe on behalf of the United States.

9           THE COURT:  Ms. MacCabe.

10          MR. SOLIS:  Good afternoon, your Honor.  Anthony

11   Solis on behalf of the Defendant, who's present in custody.

12          THE COURT:  All right.  Good afternoon to both of

13   you.

14          Appearance from Pretrial please?

15          MS. DEMYERS:  Good afternoon, your Honor.

16   Mahogane Demyers with Pretrial Services.

17          THE COURT:  Thank you very much.

18          All right.  The matter is on for a motion of

19   review of detention.  Mr. Cho made his initial appearance in

20   this court -- let's see.  My order was -- in March of this

21   year.  And at the time, he did not challenge the

22   Government's detention request.  The case has subsequently

23   been indicted.  And, so, in preparation for today's hearing,

24   I took a look at the original complaint, the indictment,

25   which came after the original and updated reports from

4

1   Pretrial Services which continue to recommend detention.

2          The Government filed a short but full throated

3   memorandum on Friday that I reviewed over the weekend.  I

4   did look at the original application from the Defense which

5   noted the existence of new sureties.  I didn't receive a

6   substantive submission.  However, this afternoon, in advance

7   of today's hearing, I received what looks like a printout

8   from a Superior Court criminal docket regarding a knowledge

9   of State Vehicle Code, some sort of DUI case from 2012 or

10  2013.

11         So, that's where I am.  Mr. Solis, it's your

12  application.  I'd be happy to hear from you at the lectern,

13  sir.  And before you get going, are you appointed or

14  retained in this matter?

15         MR. SOLIS:  I'm retained in this case.

16         THE COURT:  That's fine.  That's --

17         MR. SOLIS:  Okay.  A few things, your Honor.

18         THE COURT:  Yes.

19         MR. SOLIS:  First, the document that I handed to

20  the Court, of which I've provided a copy to the Government

21  and to Pretrial, it's a document I actually just went and

22  obtained myself from the Superior Court because I got the

23  Pretrial Services Report which indicated a warrant that we

24  had not previously been alerted to.  And I will just

25  represent to the Court that Mr. Cho indicates that he has

5

1  never received this charge, this is not him.  I will note

2  that  the name, Daeun Cho, is different than the

3  Defendant's.

4         I would also note that in the Pretrial Services

5  Report, this particular event is not noted in the criminal

6  history.  It's just noted in a separate warrant situation.

7  So, it would be kind of an odd thing to have a warrant for a

8  case that is not included in one's own criminal history.

9         And, finally, I will just make a representation --

10        THE COURT:  Just -- because I thought it -- you're

11  on page six of the updated report, which talks about the

12  subject of a -- of a warrant, correct?

13        MR. SOLIS:  Yes.

14        THE COURT:  Okay.  Yeah, I -- I --

15        MR. SOLIS:  And that's a $26,000 warrant.  And

16  I'll just note that on the last page of the -- this

17  docket --

18        THE COURT:  Okay.

19        MR. SOLIS:  -- it indicates that the individual

20  was to -- was to complete a -- an international alcohol

21  program, which I will represent is for people who live

22  abroad, because if you live here, you need to take the AB

23  541 program.  This individual had to take an international

24  program in lieu of that.  So, I also note the Pretrial

25  Services Report indicates that Mr. Cho has a valid

6

1  California Driver's License, which he would not get if he

2  did not complete an AB 541 alcohol program.

3        So, based on all that, I do not believe this

4  warrant is -- or the DUI is Mr. Cho, the Defendant seated

5  before the Court.

6        THE COURT:  Okay.  I mean, I -- I'll just confess

7  to you I didn't quite understand what the warrant was as it

8  was listed here because it didn't really list the complete

9  Vehicle Code section, and the -- it -- that didn't really

10  factor into my understanding of the circumstances here.  So,

11  thank you for --

12        MR. SOLIS:  Well --

13        THE COURT:  Thank you for -- well --

14        MR. SOLIS:  -- to be fair to Pretrial, someone who

15  has a -- a case in warrant status for 10 years, that would

16  cause a concern as to his ability to appear, his ability to

17  follow court orders and complete probation.  But,

18  nevertheless, this is not him as far as I can tell.

19        THE COURT:  Well, I can hear from the Government

20  later if they want to --

21        MR. SOLIS:  Sure.

22        THE COURT:  -- take that up or not.  But I

23  appreciate your clarification and I appreciate your work in

24  drilling down on that.

25        MR. SOLIS:  Okay.  And as far as the other issues,

7

1  as far as flight risk, Mr. Cho, according to the report, is

2  a legal permanent resident of the United States.  He's been

3  here since 2001.  He has no foreign travel.  He has no

4  passport.  They've seized I think it was an expired passport

5  from him, the agents indicated in the original Pretrial

6  Services Report.  So, he has no trial documents.

7         I do note that the Pretrial Services Report

8  indicates that he's a flight risk because he has

9  international ties.  He has parents who live in another

10  country.  That is not an appropriate consideration for a

11  flight risk.  Everybody has someone they might know

12  overseas.  I don't -- he hasn't been there.  He hasn't lived

13  there in 20 years plus.  So, I think that it's unfair to

14  create some presumption that he's a flight risk merely

15  because he's got parents in a foreign country.  He has not

16  lived there.  He doesn't have a home there.  He doesn't have

17  resources to travel.  He doesn't have a passport to travel,

18  and he's got relatives her who are willing to pledge half a

19  million dollars in their home to secure his presence here.

20         I also note that the Pretrial Services Report

21  indicates that he's also either a risk or a danger -- I

22  can't remember which one -- because of his marijuana use.

23         During the interview, he admitted to casual

24  marijuana use, never having a dependency or a problem or an

25  issue that required any kind of substance abuse.  There's no

8

1 reason why he couldn't comply with an order from this Court

2 to refrain from marijuana use as many people do that come

3 before Federal Courts, and tell the courts, Well, it's legal

4 in California, and then Federal Courts say, But it's not in

5 the Feds, and you can't do it, and most people are able to

6 comply with that, unless there's some serious substance

7 abuse or dependency issue, which Mr. Cho does not have. So,

8 I don't think that also makes him either a flight risk --

9 well, this one they assess it's a danger, his occasional

10 marijuana use.

11          He does -- he doesn't have minimal criminal

12 history. He's really got no criminal history. There's no

13 history of any conviction whatsoever. And he does have -- I

14 -- I concede the point that he does have serious allegations

15 in the report. I don't take those lightly, but I also don't

16 give them more weight than their due because of the nature

17 of this hearing, number one, and because of the nature of

18 the allegations. These are all allegations that are serious

19 in nature for which he's been never under arrest. He has --

20 has never been apprehended or even arrested and released.

21          In the Government's submission, the Government

22 appropriately concedes some of these matters are still under

23 investigation. So, while they're serious, they're --

24 they're somewhat inchoate. They're a collection of events

25 that the Government alleges happened. None have

9

1   materialized to the point where the LAPD or anyone arrested

2   him.  They've aggregated them in -- in this case.  But,

3   really, they say they're still under -- some of them are

4   still under investigation.  And the other concern, which I

5   also concede is a concern for the Court, is the gun issue.

6   he was -- they had seized some guns in his home or at the

7   time -- where he was living at the time of his arrest.  I do

8   concede that's a concern, but he was also a person with no

9   criminal history who was not prohibited from having guns.

10          He also -- when the agents -- and the Government

11   and Pretrial Services, which is really given to them by the

12   Government I would assume, paint a picture of someone who

13   was armed and resisted arrest in some way and huddled in

14   their apartment.

15          In actuality, they came to execute a warrant, and

16   he didn't know what was going on.  He did not, when the

17   police came, arm himself with any of those guns.  Those guns

18   were in a closet.  They were not accessible to him.  He

19   didn't go try to get them and defend himself and resist the

20   police in some armed way.

21          And, so, he doesn't have any of these guns.  If he

22   were to live with his aunt and under like a home detention

23   with a half a million dollars bond in -- in their home,

24   certainly the Court could fashion some kind of circumstances

25   that could protect the community if he were to be sent home

10

1  with his aunt and uncle on home detention with a half a

2  million dollar real property bond and conditions.  He could

3  certainly be placed under intensive pretrial supervision.

4  And, while I don't necessarily think all of those are

5  necessary, certainly the Court can fashion some condition or

6  some combination of circumstances which would really offset

7  the danger to the community.  I don't think flight risk is

8  really that realistic under these circumstances,

9  particularly because of the -- the strength of the real

10 property bond in this case and his lack of criminal history

11 and the fact that just -- these allegations are just that.

12        So, I could respond to whatever the Government is

13 going to say, but based on that, I think the Government --

14 or the Court, rather, should set a bond in this case, and I

15 spoke to his family.  They were going to be here.  I don't

16 see them.  But they -- both aunt and uncle agreed to be

17 sureties.  They're business owners.  They're law abiding

18 citizens.  They have two homes and -- and a business, and

19 they're citizens I believe.  And, so, I think that a bond in

20 this case is appropriate.

21        THE COURT:  Mr. Solis, thank you.

22        Ms. MacCabe?

23        MS. MACCABE:  Thank you, your Honor.  I'd first

24 like to address the warrant issue.  I don't have any

25 information to dispute what the Defense is representing, and

11

1  I'm not basing my argument on that today.

2          To begin, the Government is proffering the

3  indictment, the complaint, and the affidavit.  The --

4          THE COURT:  I know -- I know what's proffered.  I

5  have all that.  I already recited it.

6          MS. MACCABE:  Understood.  Starting with the

7  danger risk in this case, the complaint and the affidavit

8  were sworn out by the agent.  The Court found probable cause

9  to issue that.  It's based on numerous statements from

10 numerous victims.  It's based on video surveillance.  It's

11 based on photographs.  It's based on so many things that are

12 corroborative of what the agent was saying in the affidavit

13 itself.  And the allegations are very serious.  Multiple

14 victims have been seriously injured.  A victim came forward

15 and spoke about the case that's still under identification

16 but identified the Defendant as being involved in that.  And

17 LAPD is looking into it.  There's corroboration with that

18 too as well with the fact that the person who was doing that

19 was identified as the Defendant, was also wearing a mask

20 similar to the other case that we have where this Defendant

21 went and assaulted and car jacked another victim wearing the

22 mask, and agents were able to find these skeleton masks that

23 the Government submitted as Exhibit 1 to its opposition in

24 this case.  It's shown in the photograph alongside all these

25 firearms, baseball bats, like the baseball bats that were

12

1 used against one of the victims.  There are multiple knives

2 in this photo.   The Defendant is a serious danger.  And,

3 while he doesn't have any criminal convictions, the Pretrial

4 Services Report itself notes multiple charges, including a

5 charge for assault with a deadly weapon, not a firearm, with

6 great bodily injury likely from 2015 and another charge of

7 carrying a loaded firearm in public.

8         And all of these charges, while they aren't part

9 of his criminal history, it does show his contacts with law

10 enforcement over the years, and --

11         THE COURT:  Unless it doesn't.

12         MS. MACCABE:  My apologies?

13         THE COURT:  Unless it does not.  I mean, I've got

14 a pretty consistent record of this Court of not considering

15 issues like arrests that don't lead to a conviction where

16 perhaps a prosecutor like you dismissed the case before

17 going to fruition.  I --

18         MS. MACCABE:  Perhaps.  And I do recognize that

19 some --

20         THE COURT:  I actually do have that record, Ms.

21 MacCabe.  It's not a perhaps.  I have a record.  I don't --

22 I don't consider this if it didn't lead to a finding by a

23 court that a person is -- was convicted or pled to that.

24         MS. MACCABE:  Understood.  Outside of those then,

25 the -- so, based on the allegations that are in the

13

1 complaint for the charges that this Defendant is charged

2 with in this case, as well as the surrounding circumstances

3 that are all part of this extortion scheme that has been

4 laid out, this Defendant is a danger to the community.  The

5 victims are understandably frightened.  One of them was

6 noted in the complaint as already having relocated out of

7 state as the Pretrial Services notes today.  Other victims

8 have come forward and expressed similar concerns if the

9 Defendant is released now, that they will also be

10 relocating.  They are afraid of this Defendant.  He has been

11 a danger to this community for years.  He's been victimizing

12 the people within his community, and the Government has

13 shown by clear and convincing evidence that the Defendant is

14 a danger should this Court release him and -- in addition to

15 all the reasons I laid out in my paper.

16         Turning to the risk of nonappearance, yes, the

17 Defendant does not currently have a valid passport to leave

18 the country.  However, the Pretrial Services Report notes

19 that he is a citizen of South Korea.  And while we could say

20 whether or not he wants to leave this country, that's

21 another thing.  He does have support outside of the country

22 should he decide that he would like to leave.  His parents

23 and his sibling, who he communicates with weekly according

24 to the Pretrial Services Report, live in the country where

25 he has citizenship.

14

1        Additionally, although he does not have a passport

2   right now, he had multiple invalid passports that agents

3   were able to seize in this case.

4        And, turning back to the complaint itself, notes

5   that the Defendant was engaged in counter surveillance

6   methods when he was trying to extort one of the victims in

7   this case, trying to avoid law enforcement, asking if the

8   police had been called on him, showing great concern for all

9   of that.  And when the police did come to arrest him, he, as

10  the Pretrial Services Report notes, tried to escape out of a

11  bathroom window.  And he was found with all these firearms,

12  and he would not come out of the house for approximately 5

13  to 10 minutes and was engaged in a standoff for all that

14  time.

15       So, the Government believes for all those reasons,

16  that by a preponderance of the evidence, the Defendant is a

17  risk of nonappearance in this case; and for both risk of

18  nonappearance and danger, the Government submits that he

19  should be detained pending trial.

20       THE COURT:  Okay.  Thank you, Ms. MacCabe.

21       MS. MACCABE:  Thank you.

22       THE COURT:  Mr. Solis, do you want the last word?

23       MR. SOLIS:  Yes, your Honor.  And I appreciate the

24  Court's acknowledgment, and your reputation does precede you

25  for not considering arrests that don't result in a

15

1 conviction, particularly because the Government can always

2 aggregate things that are mistakes or things for which there

3 wasn't even enough evidence to get past a preliminary

4 hearing.  Those are not appropriate considerations, and I

5 think that the allegations, even though they're in a sworn

6 complaint, those are the same types of allegations that are

7 the ones that are dismissed.  They haven't been adjudicated.

8 They haven't been resulting in any kind of arrest or

9 anything like that.

10          And I think, while the -- the allegations in the

11 complaint are serious, they are allegations.  We're talking

12 about things if the Court listened to the Government

13 carefully, things like a bat, a bat -- like a bat that was

14 found in the Defendant's house.  I've got several bats in my

15 house.  I don't know that people can -- there was no one

16 that identified any particular bat that he used that was

17 distinctive in some way.  The mask might have been

18 distinctive in some way.  The point is is that a lot of

19 these allegations are just that, and I think they should be

20 given the appropriate weight in the bail kind of analysis,

21 which is not a great deal of weight in the big scheme of

22 things.

23          The fact that Mr. Cho communicates with his family

24 I think is commendable, not something that makes him a

25 flight risk.  I don't think that if he didn't communicate

16

1  with his family that that would be something that the

2  Government would say, We're glad he doesn't communicate with

3  his family because now he's got nowhere to go.

4        I think on balance, the Court can set some

5  restrictive set of conditions, including home detention with

6  GPS monitoring.  He'd be sitting in the same place.  He

7  wouldn't be going anywhere.  He'd be in the care of his aunt

8  and uncle who are putting their house -- their home on the

9  line.  So, I think the Court has sufficient information to

10 set a bond in this case.

11       THE COURT:  Can I clarify because I didn't get a

12 submission from you?  The property that the family members

13 are offering is something that's being used as an Air BNB,

14 correct?

15       MR. SOLIS:  The -- there's two -- there's two of

16 them.  They have two real properties.  I honestly don't know

17 which one is which.  I think they were offering one and then

18 decided to do the other, but I -- I don't know that if the

19 Court wanted to have the one secured with -- I think it's

20 South Wilton, which is where they live, I think they would

21 be willing to do that as well.

22       THE COURT:  Well, I -- I understood the discussion

23 with Pretrial to be a property on Fuller.

24       MR. SOLIS:  There -- there was two.  I don't know

25 that they -- they told me that they were going to do one

17

1 property.  They provided the property profile, and then they

2 said they wanted to do the other property, but I don't think

3 they were exclusive.  I think if they were asked to do the

4 one that's their home, they would do that.  If they were

5 permitted to do the one that's the other property, they

6 would do that too.

7           They -- I know that one of them is in the uncle's

8 name and maybe one of them is in both of their names.

9           THE COURT:  I'm -- it was a little confusing, and

10 -- Pretrial, do you have any insight or am I -- are we both

11 going to read the report and figure it out?

12           MS. DEMYERS:  The only information I have is in

13 the report, your Honor.

14           THE COURT:  All right.  That's fine.

15           MR. SOLIS:  But I will just say for the Court's

16 knowledge, the Wilton address is their home, and that's the

17 home where he would be living.

18           THE COURT:  Understood.  And I'm not trying to be

19 formal here.  We can talk about my findings; but, I mean,

20 the question is what's it worth, how much equity?  You know,

21 we have that for the other property, not this one.

22 That's --

23           MR. SOLIS:  Okay.  So --

24           THE COURT:  That's all I'm trying to get.

25           MR. SOLIS:  So, I have the property profiles, and

18

1 I believe I sent both of them to Pretrial, though they may

2 have only discussed one of them with the family, but each of

3 the properties had approximately we'll just say between five

4 and seven hundred thousand dollars in equity.  So, they're

5 -- they're comparable in value as far as the equity is

6 concerned.

7          THE COURT:  Your representation is fine for me.

8 That's fine.  Okay.  I understood.  Okay.

9          MR. SOLIS:  I'm going to submit on that.

10         THE COURT:  Thank you.

11         All right.  All right.  Nice job both of you, and

12 thank you very much for your work on this.  Before I give my

13 findings, I just want to make two clarifications.

14         First, I went back, and I pulled my original

15 detention order, and I note two things -- I note three

16 things.  First of all, the -- the matter was not contested

17 at the original appearance.  And, so, the -- we also had a

18 situation where Pretrial didn't have a full amount of

19 information.

20         However, I did not, even on that record, conclude

21 that Mr. Cho was a risk of nonappearance that I couldn't

22 deal with with a combination of conditions.  I just -- I

23 didn't -- I didn't detain on that basis.  I detained solely

24 on risk of danger to the community.

25         Similarly, at the time of the original detention,

19

1  there was no information in front of me about this warrant

2  that either I should or shouldn't consider today, but my

3  original decision was not based on that because it wasn't in

4  the report.  And, to the extent it's here now, I take the

5  Government's representation that they're not relying on it

6  either.

7          The second point I want to make -- and I

8  appreciate the very kind comment from Mr. Solis, who's an

9  extremely experienced lawyer in our federal community.

10         Yeah, as I said, I don't consider a person's rap

11 sheet.  There are a lot of issues that go into -- shoot, I

12 don't consider arrests and police encounters that are part

13 of what is considered a rap sheet because I just don't find

14 it to be persuasive because I don't know enough about those

15 allegations.  I don't if it's the person.  I don't know if

16 it's just a situation of bad -- wrong place, wrong time.  I

17 just don't know enough about it, and it is such an

18 inflammatory set of statements that I just don't -- I find

19 it's fundamentally unfair for me to consider information

20 like that.

21         I don't equate that, though, with information

22 where I do have more information such as the sworn statement

23 of a federal investigator which is presented to me in

24 support of a complaint.  Now, I recognize that the complaint

25 is one sided.  I recognize that the complaint has not been

20

1  tested in the adversarial process.  I recognize that the
2  complaint has not been tested at trial and has not led to a
3  conviction.  However, the information that's contained in a
4  criminal complaint is by statute something that I can
5  consider to the extent it goes to not the likelihood of a
6  conviction or acquittal.  That's not part of the test under
7  Section 3142.
8          What I am required -- required to consider is the
9  strength of the evidence to the extent it relates to issues
10 like my ability to set conditions to alleviate risk of
11 nonappearance or danger to the community.
12         So, when I have information that has been
13 presented to me, if it's convincing or if it's in convincing
14 enough detail or if it's corroborated by other information,
15 even though it's not been tested in the way that, you know,
16 it may be later on in this case, I am entitled to consider
17 that.  And, so, I just want to politely push back to a
18 statement that perhaps information in the complaint is like
19 information in a -- an unproven part of a rap sheet.  I
20 don't necessarily agree with that.
21         Where I am is that the Government, given the
22 nature of the case, bears the burden of demonstrating by
23 clear and convincing evidence, because I -- I'm not going to
24 take up risk of nonappearance.  I'm just not.  If anything,
25 the Defense's position has gotten stronger by the appearance

1 of some sort of secured bond and a realistic release plan.

2          But on the issue of risk of danger to the

3 community, the Government bears the high burden of

4 demonstrating by clear and convincing evidence that I cannot

5 set conditions that would reasonably assure me that the

6 community would be safe.

7          Based on the original record, I found that the

8 government had met that burden.  At the time, there was

9 nothing coming back from -- from the Defense side, which is

10 fine.  And, now, where I am is I have a fully interviewed

11 individual and the proffer of what I take to be a legitimate

12 surety in the community.  And whether it's the air BNB

13 property or the other property, I'm going to assume for

14 purposes of discussion, that we could -- we could figure out

15 who it is.  But where I am is not significantly different

16 from where I was several months ago, which is I have a guy

17 who has, even with no criminal convictions -- and I -- I

18 take that seriously, one minor driving infraction, which

19 appears to be on -- on this -- but a considerable amount of

20 evidence in a lengthy and detailed federal affidavit showing

21 significant threats of violence, acts of violence, and

22 corroborative evidence of violence, including once incident

23 captured on video.  The issue about surveillance, counter

24 surveillance, driving and so forth, that's interesting.

25 That's good.  I'm not sure where that leads me.  Issues

22

1  about the arrest at the house are problematic.  The
2  existence of significant weaponry -- and I'm going to go
3  beyond the -- the pink baseball bat, and just to back up Mr.
4  Solis, I have a baseball bat in my house.  It's from when I
5  used to play baseball.  I don't have any of the other
6  weaponry that's laid out on the table.  That's my choice,
7  but -- and I -- I -- I recognize that there may not have
8  been a statutory prohibition for him possessing these
9  weapons, that there's no felon in possession charge here.  I
10  don't know the legitimacy or legality of these weapons, even
11  under current Second Amendment law.  I didn't see anything
12  one way or the other in the reports about lawful
13  registration of any of these weapons, but there's a lot of
14  stuff here, and it does tend to corroborate -- and this is
15  material that was obtained as a result of a search warrant
16  -- corroborates aspects of the allegations of serious
17  violence that were contained in -- in the affidavit.
18          And where I'm going is I just don't know what
19  conditions I can set that would reasonably assure me that a
20  guy who knows how to get his hands on these weapons, a guy
21  who has some credible allegations of using them over a
22  prolonged period of time, I -- I don't know that a threat to
23  an aunt or an uncle's equity gets me there, and I don't know
24  how I could plausibly agree to conditions and trust that a
25  digital device gets charged or that a person respects a

23

1  court order to stay in certain places given legitimate and

2  credible evidence of -- of significant lawless and violent

3  behavior.

4          So, although I am grateful to have the opportunity

5  to reconsider this, because I always want to consider

6  release from custody, and I do think that the request was

7  well based, and the fact that a family member or family

8  members were willing to step up for this guy has -- has real

9  meaning to me, but I don't know that I can set conditions

10 for release that would reasonably assure me that the

11 community would be safe.  And, so, on that basis, I am not

12 inclined to modify my original detention request.

13         Anything else from the Government today?

14         MS. MACCABE:  Not today, your Honor.  Thank you.

15         THE COURT:  Mr. Solis?

16         MR. SOLIS:  Not on behalf of the Defendant, your

17 Honor.

18         THE COURT:  All right.  Thank you all very much.

19         MS. MACCABE:  Thank you.

20     (Proceedings concluded.)

21

22

23

24

25

24

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Jordan Keilty                    10/31/2023
     Transcriber                          Date
6
     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8    /s/L.L. Francisco
     L.L. Francisco, President
9    Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25