1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4                       - - -

5    HONORABLE FERNANDO M. OLGUIN, DISTRICT JUDGE PRESIDING

6

7    UNITED STATES OF AMERICA,        )
                                      )
8             Plaintiffs,             )
                                      )
9                                     )
                                      )
10        vs.                         ) No. CR 23-00149-FMO
                                      )
11                                    )
                                      )
12   DAEKUN CHO,                      )
                                      )
13            Defendants.             )
     ─────────────────────────────────)

14

15

             REPORTER'S TRANSCRIPT OF PROCEEDINGS
16
                   *BAIL REVIEW HEARING*
17
                  LOS ANGELES, CALIFORNIA
18
                 THURSDAY, AUGUST 3, 2023
19
     ──────────────────────────────────────────────────────
20

21                  MARIA R. BUSTILLOS
                  OFFICIAL COURT REPORTER
22                    C.S.R. 12254
                 UNITED STATES COURTHOUSE
23                 350 WEST 1ST STREET
                       SUITE 4455
24          LOS ANGELES, CALIFORNIA 90012
                    (213) 894-2739
25

```
1                    A P P E A R A N C E S

2

3

4        ON BEHALF OF THE PLAINTIFFS,
         UNITED STATES OF AMERICA:        OFFICE OF THE UNITED STATES
5                                         ATTORNEY
                                          BY:  KEVIN JAMES BUTLER,
6                                         ESQ.
                                          312 NORTH SPRING STREET
7                                         12TH FLOOR
                                          LOS ANGELES, CA 90012
8                                         (213)894-6495

9
                                          OFFICE OF THE UNITED STATES
10                                        ATTORNEY
                                          BY:  JENA A. MACCABE, ESQ.
11                                        312 NORTH SPRING STREET
                                          13TH FLOOR
12                                        LOS ANGELES, CA 90012
                                          (213)894-5046

13

14

15       ON BEHALF OF THE DEFENDANTS,
         DAEKUN CHO:                      ANTHONY M. SOLIS, APLC
                                          BY:  ANTHONY M. SOLIS, ESQ.
16                                        23679 CALABASA ROAD
                                          SUITE 412
17                                        CALABASAS, CALIFORNIA 91302
                                          (213)489-5880

18

19

20

21

22

23

24

25
```

1

**I N D E X**

2                                                                    PAGE

BAIL REVIEW HEARING:                                                 4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1          LOS ANGELES, CALIFORNIA; THURSDAY, AUGUST 3, 2023
2                              -o0o-
3                  (COURT IN SESSION AT 11:02 A.M.)
4          THE COURTROOM DEPUTY:  Calling item number
5     three, CR 23-00149-FMO:  United States of America v.
6     Cho.
7          MR. BUTLER:  Good morning, Your Honor.
8     Kevin Butler and Jena McCabe on behalf of
9     the United States.  And also present in the courtroom
10    are two of the victims who intend to assert their right
11    to be heard today.
12         THE COURT:  Okay.
13         MR. SOLIS:  Good morning, Your Honor.
14    Anthony Solis on behalf of Mr. Cho.  He's present, in
15    custody.
16         THE COURT:  Okay.  So why don't we -- why don't
17    we get started here.  We're here on a bail review.
18    Mr. Solis, go ahead.
19         MR. SOLIS:  Sure.  This is a review of
20    Judge Wilner's order of detention.  And my understanding
21    is it's a de novo review by this court.  And I've
22    reviewed the presentence -- or rather the pre --
23    Pretrial Services' report in this matter.  And in that
24    report, it indicates that there are some flight risk
25    issues, but I would argue that those flight risk issues
```

1    are not significant enough to make Mr. Cho an actual

2    flight risk.  He has almost no criminal history.  There

3    is an entry of some L.A. municipal code infraction and a

4    drug possession DEJ dismissal diversion.  It doesn't

5    appear that he's got any other criminal history.  There

6    was in the Judge Wilner hearing some allegation that he

7    was -- he was on -- had a warrant for some DUI case out

8    of Torrance, and we determined through the evidence of a

9    docket sheet in the superior court that that was

10   actually not him.  And in this current report, it

11   indicates he doesn't have any warrants on file at all

12   for any -- any matter.  He does have some arrests, but I

13   understand and would hope that this Court wouldn't

14   consider cases that were never brought, cases that were

15   dismissed, evidence such as arrests that were never

16   charged.  And so in that case, he really has no

17   significant criminal history of any kind.  The Pretrial

18   Services' report also indicates that there is some kind

19   of occasional marijuana use that also constitutes some

20   flight risk.  I discount that almost entirely.  Numerous

21   people smoke marijuana in Southern California.  It

22   doesn't make them any kind of a flight risk, and even

23   the report itself remarks that the marijuana use was

24   occasional.  It wasn't something that he couldn't abate

25   if he wanted to or was ordered to as a condition of

1    release.  He doesn't appear to have any drug problems

2    that would make him enable -- or unable to appear in

3    court and follow the Court's orders.

4         Also, on flight risk he has significant

5    sureties.  He's got an aunt and uncle with whom he could

6    live, and the proposal from the Defense to Judge Wilner

7    was that he be on home detention, living in the home of

8    the aunt and uncle.  And their residence is the home

9    that would be used to secure his -- his bond.  He

10   doesn't seem to have any mental health issues.  He has

11   no passports.  They've all been seized by the

12   Government, and they're in the -- their possession.  He

13   also had no international travel since he's been here,

14   and he's a permanent legal resident.  So I think on the

15   flight risk issue, there really is no real issue with

16   regard to his being a flight risk, other than the

17   obvious or normal consideration that he's charged with a

18   crime, he could go to prison, but every single case has

19   that -- almost every single case in federal court has

20   that potential consequence.

21        With regard to danger, I can see that the

22   concerns are more sensitive, particularly because number

23   one, we have victims in the courtroom.  I'm sure they're

24   going to say as they've said in the pleading that the

25   Government has filed in advance of this hearing that

1    they're in fear of the defendant, and if he is released,

2    their fear will somehow be exacerbated.

3           There was an initial allegation in the pleading

4    that the Government submitted in advance of the hearing

5    before Judge Wilner where the Government indicated there

6    was also some firearms found in the defendant's

7    possession at the time of his arrest.  And what I would

8    say about that is there is no allegation in either the

9    offense or in the apprehension arrest of Mr. Cho that

10   those allegations -- those firearms were used in any

11   way.  There was no allegation that he armed himself.  I

12   think the Government is a bit histrionic when they call

13   a 5-minute delay -- a 5- to 10-minute delay of him

14   coming out of his residence, a standoff.  I think that's

15   a bit of an exaggeration, but even to the extent that he

16   didn't immediately comply with law enforcement orders,

17   to the extent that he would have been a real danger to

18   the community, one would have expected that he would

19   have armed himself in some way if he had guns in his

20   possession.  He didn't do anything like that.  He didn't

21   arm himself with an -- one of the firearms.  He didn't

22   arm himself with a bat, nothing like that.  There's no

23   allegations that he was prohibited from using or owning

24   guns.  He has no prior felonies.  He's not a -- he has

25   no mental health issues.  He has no domestic violence

1   history.  So there's no reason why he couldn't lawfully

2   possess a firearm.

3        And as far as the standoff is concerned or the

4   delay in apprehending him when he went to be arrested,

5   my understanding is that was an early morning arrest.  I

6   think it's very jarring to be -- you know, announce

7   that, you know -- to come out of your -- come out of

8   your residence when you've just been woken up out of

9   your sleep and you didn't -- really don't know what's

10  going on.  So I think a few minutes to understand what's

11  going on and to understand that maybe they are really

12  police and they really -- you really should do that, I

13  don't think there was any kind of resistance or standoff

14  like -- like the Government says.  So I think in sum,

15  really what we're talking about in this case is the

16  allegations in the indictment as the source of what

17  would be the danger.

18        It's difficult, obviously, to try the case at

19  this particular hearing.  And I'm not going to try to do

20  that, but I would argue that with an individual with

21  Mr. Cho's history, the risk of both, flight and danger,

22  can be mitigated by having him stay on home detention

23  with an electronic monitor, living with two responsible

24  sureties who are his aunt and uncle, and they have

25  agreed to put all, if not nearly all of the equity in

1   their residence -- the one they live in and they've

2   lived in for some time and to secure his bond.  He has

3   no passports.  He has no significant assets to flee

4   with.  And I think considering all of those

5   circumstances, certainly the Court can fashion a bond

6   that would both protect the community and eliminate or

7   reduce the risk of flight with regard to this particular

8   defendant.  I'm going to submit on that for now.

9          THE COURT:  Okay.  Thank you.

10          MR. BUTLER:  The Government would agree with

11   Defense that the magistrate court did not find flight --

12          THE COURT:  There is no magistrate court,

13   Counsel.

14          MR. BUTLER:  The magistrate judge,

15   Your Honor --

16          THE COURT:  Okay.

17          MR. BUTLER:  -- did not rely on flight here.

18   And the Government would agree that that is secondary to

19   the danger to the community, which the Government

20   briefed at length; however, there is some risk, given

21   his citizenship, given -- although, he is an LPR, I

22   think he's in removal proceedings and has citizenship

23   and ties to Korea, as well as relatives that he's in

24   contact with there; however, the Government mainly

25   relies on the danger to the community.

1    As we put forth in our briefing, for years the

2  defendant has executed a pattern of violence, of fear,

3  of intimidation, to control and extort victims in the

4  Koreatown karaoke community.  He charged monthly fees;

5  he controlled their behaviors; violently attacked and

6  threatened and assaulted multiple victims.  The nature

7  of these crimes and the danger to the community created

8  by those crimes are horrendous.  We put forth in our

9  briefing, he hunted these victims down.  He brought

10  accomplices with him.  He brought weapons with him.  He

11  asked for their locations to other coworkers.  And then

12  when he found them, he either beat them with a baseball

13  bat as is seen on video, punched them, threatened to

14  kill them, and then assaulted others and used those same

15  assaults as -- broadcast them to intimidate others.  He

16  literally bragged about socking people, about finding

17  people and making sure that they were going to the

18  places he was allowing them or not going to the places

19  he wasn't.

20    Since the defendant has been incarcerated, the

21  victim list has only grown.  There are several victims

22  that we put forth that have come to law enforcement now

23  that they feel safe enough to actually speak to law

24  enforcement.  And the nature and the characteristics of

25  the defendant's -- defendant show that he is not

1    amenable to supervision.  Although, the criminal history

2    is certainly minimal, he was under a diversion sentence

3    while committing these crimes.  He was arrested with

4    weaponry after somewhat of a standoff.

5              THE COURT:  What's a diversion sentence?

6              MR. BUTLER:  My understanding is that he was

7    sentenced to diversion, and as long as he completed

8    diversion, those cases -- those state cases would be

9    diverted, meaning there would be no convictions

10   whatsoever.  I think the charges were attempt to

11   destruct evidence and carrying a loaded firearm.  I

12   believe that at this point, those are on track to being

13   diverted, such that they will not exist, but I do think

14   it is relevant to the idea that he's amenable to

15   supervision in this case.

16              And, again, to the -- to the flight issue

17   during the standoff, it did appear that he was trying to

18   look at multiple windows to escape from law enforcement.

19   And in the second window that he looked out, in that

20   room was a firearm that was loaded and the safety was

21   disengaged.  He also attempted to evade law enforcement

22   detection, both by intimidating the victims.  We

23   submitted dash cam footage of him asking people if

24   they'd called the cops.  And during a controlled

25   extortion payment, he noticed that a -- that a vehicle

1    he suspected to be law enforcement that, in fact, was

2    law enforcement was there, and had the victim then pay

3    intermediary the extortion fee so that he could evade

4    law enforcement.

5              There was also a Motorola phone that was hidden

6    in the bathroom.  Law enforcement has since been able to

7    access that phone.  And in that phone are the most

8    damning inculpatory text messages, confirming the

9    assaults, confirming the extortions, confirming the

10   threats to kill and that the number he was using that

11   everyone associated with him, was associated with that

12   Motorola phone.

13             And finally, to the weight of the evidence

14   which I've just sort of gone through:  A lot of this is

15   corroborated, not only by the victims themselves but by

16   cell site data, by videos of the attacks or dash cam

17   footage of the attacks or literally text messages from

18   the defendant himself bragging about finding someone,

19   about socking them, threats to kill people.  And since

20   the arrest, there's, again, additional allegations of

21   firearm use which is something Defense counsel just

22   addressed.  At least one victim has said that in 2020,

23   he pointed a firearm at a karaoke's worker's head, and

24   there are additional extortion victims coming forth, as

25   well.

 1          I think that all of this evidence is

 2     corroborative of each other.  We put it in the briefing,

 3     including the mask, the bats, and the cell site data,

 4     such that the weight of the evidence corroborates not

 5     only the history and characteristics of the defendant

 6     but the nature of the crime and the danger represented

 7     to the community itself.  With that, the Government

 8     would submit, unless the Court has questions and allow

 9     the victims to speak.

10          THE COURT:  One question:  What -- so let's

11     assume that for purposes of this, that you've made the

12     showing that he's a danger to the community.  You know,

13     that's -- that's just the first step; right?  That the

14     next step is, are there conditions that can be fashioned

15     to deal with that finding?  Explain to me why there are

16     no conditions; why the conditions that Defense counsel

17     set forth can't be imposed to deal with those -- with

18     the issue of danger to the community.

19          MR. BUTLER:  Yes, Your Honor.  I think to the

20     surety, the Government as always, has the support of

21     relatives and community members.  And I think the

22     problem upfront is that he presumably had that support

23     over the last five years as he's committing these series

24     of crimes.  The other issue I think is that he was not

25     only a legal permanent resident who was fighting

1    deportation and fighting some charges that would make

2    him removable, but he committed these crimes anyway and

3    then the diversion sentence.  So supervision here

4    wouldn't have the same immense benefit that a diversion

5    sentence does where your crimes are completely erased

6    from your record.  Even though he was under those

7    diversionary sentences with great benefit if he was to

8    stay a law-abiding citizen and complete the diversion

9    process, he still chose to commit these crimes.  I think

10   the most troubling is the nature of the crime itself,

11   the surreptitious extortion and attacks and intimidation

12   put on these victims that anything that he was doing,

13   was targeted at people who wouldn't want to go to the

14   police or would be intimidated to go to the police.  So

15   any sort of violations that would occur are in line with

16   his scheme that he has been doing for several years now

17   to disincentivize any sort of law enforcement knowledge

18   of what he's doing.  So I think the idea that he would

19   comply with the conditions is undermined by his conduct

20   over the last 3 to 5 years.

21              THE COURT:  Okay, okay.

22              MR. BUTLER:  Thank you, Your Honor.

23              MR. SOLIS:  May I be heard, Your Honor?

24              THE COURT:  Yes.  And then we can have the

25   victims speak when he's done.

1          MR. BUTLER:  Thank you.

2          MR. SOLIS:  First of all, there's a qualitative

3    difference between diversion and the type of supervision

4    that Pretrial Services would be engaging here.  And I

5    don't want to assume that the Court is aware, but since

6    I also practice in state court, I could just offer on

7    information and belief.  Diversion is you either plead

8    or don't plead and then go out and keep yourself clean,

9    and if we find out about something, we find out; and if

10   we don't, we don't.  Pretrial Services would be -- at

11   least, in the hearing before Judge Wilner, the defendant

12   I -- and I -- we're sensitive to the fact that the

13   nature of the charges and the nature of the fact that

14   witnesses are feeling intimidated, we actually offered

15   the most -- the strongest terms that would satisfy the

16   Government's concerns, and that is home detention.  He

17   can't go anywhere and electronic monitor.  If he did go

18   anywhere, we would know about it right away.  If he did

19   anything -- his aunt and uncle, who are really the -- if

20   not the only -- at least, the most significant relatives

21   he has in this country would lose their residence.  And

22   they've agreed to have him come in their home -- and not

23   only offer their home as security but also, you know,

24   monitor him in their home because he would be there all

25   the time.  So the fact that he had a diversion where no

```
 1    one is supervising and there is no supervision, I think
 2    that's kind of an inapposite consideration, whereas
 3    here, we not only have the security of the sureties that
 4    could lose their home, the relatives that are very
 5    close -- they are the closest relatives that he has in
 6    this country.  He has -- they're here in the audience
 7    today.  They've been for every court hearing.  So to say
 8    that somehow he couldn't -- he didn't conform his
 9    behavior when he was under that type of supervision,
10    which was no supervision at all as opposed to the type
11    of supervision which is arguably the most restrictive
12    conditions that this Court could impose, I suppose there
13    could be more -- I just haven't -- my imagination
14    doesn't go that far to think of what more could be done,
15    other than maybe to restrict him from any cell phone use
16    or any kind of computer use so he wouldn't have any way
17    to contact any third party to communicate anything with
18    the victims; but while I appreciate the Government's
19    concerns, I think the Court is correct to say yes, the
20    allegations present a concern for both, the community
21    and the -- and, in general and the victims, in
22    particular, that does not mean that there can't be some
23    kind of conditions that can be fashioned that could
24    alleviate both concerns.  And I also agree with the
25    Government that the flight risk concerns are really
```

1  secondary by a long shot to the -- to the danger.  And

2  that's why when we initially proposed the restrictions,

3  they were among the most restrictive I think the Court

4  could offer and still release the defendant.

5          THE COURT:  Okay.  Is the Pretrial Services

6  officer here?

7          THE PRETRIAL OFFICER:  Good morning,

8  Your Honor.  Yuwall Hedoff with Probation and Pretrial

9  Services.

10          THE COURT:  So I want you to address the same

11  question about conditions:  Is it your view that none of

12  the proposed conditions, if they were imposed:  The home

13  detention, the monitoring, even taking away the phone,

14  that none of those conditions can deal with the issue of

15  danger?

16          THE PRETRIAL OFFICER:  Yes, Your Honor.

17          THE COURT:  It is your view?  How come?

18          THE PRETRIAL OFFICER:  The conditions don't --

19  they're not confinement.  We're not a prison system.  If

20  the defendant chooses --

21          THE COURT:  Well, that's obvious.  But why are

22  the conditions insufficient?

23          THE PRETRIAL OFFICER:  Well, if the defendant

24  chooses to violate those conditions, then there's

25  nothing --

1          THE COURT:  Then that would apply in every

2     single bail hearing.  You have to explain to me why the

3     conditions are not sufficient to deal with the danger to

4     the community.  If he chooses to violate, well, then

5     nobody gets bail in the federal system if that's your

6     approach.  Go on.  Now answer the question.

7          THE PRETRIAL OFFICER:  Well, I believe that

8     given the arguments presented by the Government and

9     the -- this particular case, the defendant poses a very

10     significant danger to the community, and the conditions

11     being imposed particularly are not ones that that can

12     prevent the defendant from continuing to behave in that

13     kind of circumstance.  They don't prevent the defendant

14     if he so chooses to continue engaging in illegal

15     behavior.

16          THE COURT:  Okay.  Thank you.  Mr. Butler,

17     address the specific conditions because he, obviously,

18     didn't do it.  I need an explanation as to why the

19     conditions are not sufficient; right?  I'm going with

20     you that there's danger.  You've established danger.  So

21     now tell me why the conditions won't work.  And the

22     argument that because he may choose to violate, that

23     applies to every defendant.  So that's a useless

24     argument.  Don't make that argument.  So tell me -- go

25     through each condition and tell me why it's

1    insufficient.

2         MR. BUTLER:  I think all of them, Your Honor,

3    from a broad strokes perspective rely on his good faith

4    compliance in this.  Your Honor just mentioned --

5         THE COURT:  That's true for every defendant.

6         MR. BUTLER:  Agreed, Your Honor.

7         THE COURT:  And he has no criminal record.  And

8    everything that's in the record suggests that there

9    would be good faith compliance; right?  Because of

10   the -- has virtually no criminal record, but go ahead.

11   He did violate diversion.  So I think that's pretty

12   significant and that's -- that really troubles me that

13   he -- and irrespective of -- Mr. Solis, of whether there

14   was any supervision or not, the fact that he was in

15   diversion and committed this while on diversion, that's

16   really troubling to me.  But go ahead.

17        MR. SOLIS:  And, Your Honor, I'd like to

18   address that.

19        THE COURT:  You will.  And I'll let you.

20        Go ahead.

21        MR. BUTLER:  Understood, Your Honor.  What I

22   will say is that this defendant's crimes, in particular,

23   that are alleged here, by their very nature are

24   extortion, intimidation, that tried to evade law

25   enforcement, awareness -- so his lack of a criminal

1    history could be the result of his success of these

2    crimes to address the conditions themselves -- and

3    you're correct that all of them always rely on good

4    faith compliance of the defendant, but just to take one,

5    for example, the Court mentioned taking away his

6    phone -- not allowing any phone access.  When the

7    defendant was arrested, he had multiple phones.  He had

8    one that was clearly used only for criminal activity.

9    He hid that phone in a surreptitious location during

10   this five- to ten-minute standoff.  That's the exact

11   type of behavior that would be outside the scope of what

12   Pretrial Services would be aware of if they say you

13   can't have a phone, but he's got a surreptitious phone

14   that he's willing to hide as he is here.  There's

15   nothing they could do to figure that out or to do

16   anything about it.  I think it's also troubling that in

17   at least one of these instances, he brought an

18   accomplice with him to the actual assault, instructed

19   him about what to do there.  Pretrial Services wouldn't

20   be able to ensure that he's not directing others or even

21   discussing things with victims to ensure that others

22   aren't testifying, that more victims aren't coming out

23   as they have after his incarceration or testifying

24   against him, and could even use this accomplice or

25   others -- again, even victims who fear him, to continue

1    the exact same extortion and intimidation scheme that

2    he's been perpetuating for years.  And I think we put,

3    you know, several cases in our briefing that talk about

4    prohibiting the defendant from committing a crime of

5    intimidating a witness, doesn't impede the ability to do

6    so, which is exactly sort of what he's done all along.

7    And, again, these are often victims who are long native

8    English speakers, noncitizens who may be more easily

9    intimidated or persuaded not to go to law enforcement,

10   which only furthers the Government's fear of what he

11   could do underneath pretrial supervision, regardless of

12   what conditions are set forth.  If there's more specific

13   questions, I'm happy to answer them, Your Honor.

14             THE COURT:  No, that's good.  Thank you.

15             MR. BUTLER:  Thank you.

16             THE COURT:  Mr. Solis?

17             MR. SOLIS:  This type of issue comes up a lot

18   in bail hearings where we get a pretrial services report

19   of -- yeah, a pretrial services report, and the report

20   will say things like, he's got, you know, 20 written

21   failures to appear.  He didn't have all these traffic

22   tickets.  He has all these failures to appear.  He

23   bench-warranted in this case.  He -- he, you know, did

24   this -- and so he's got -- he's a flight risk because he

25   failed to appear in all these other cases.  And then

1    when you look closer, you find that he got pulled over

2    by an officer, and he signed a piece of paper and drove

3    away.  And he failed to appear.  So yes, he technically

4    failed to appear on his written promise to appear.

5    Maybe he even bench-warranted in something where there

6    was a $20,000 bond, and it got -- it got -- you know, he

7    lost the money or something like that.  Those types of

8    things that happen -- and I will include a diversion

9    where -- it's a Court order -- and I don't make light of

10   any judge's Court order to say, obey the law.  Here's

11   the conditions.  Now go do it.  That is just

12   qualitatively different from the way that we do things

13   here in federal court.  There isn't just a, you promise

14   to obey, and then your reward at the end is this and

15   then just go.  There's no supervision.  There's no

16   monitoring.  There's no backstop of any kind.  There's

17   not even a bond in most cases where you get diversion.

18   In this court, it's a whole series of different types of

19   monitoring.  It is -- the first line is a pretrial

20   services officer with who he's got to check in.  There

21   is an electronic monitor that he would have to wear.

22   And I've had clients that have not violated the -- the

23   electronic monitor condition and still gotten called to

24   court, because they came too close to the airport or

25   they came to too close to the bus station.  And the

```
 1    things rang off.  They had a computer that had something
 2    that might be in violation.  And all of those things are
 3    things that we do in this court that are qualitatively
 4    different than just merely a promise to obey the law and
 5    you'll get a reward at the end.  Punishments for
 6    violating any of the conditions that the Defense is
 7    suggesting are severe.  They're not just you'll -- okay.
 8    So you violated.  You used marijuana.  You called
 9    someone that you shouldn't.  You had something you
10    shouldn't have, and so we're going to remand you.
11    That's not true.  The people he is closest to will lose
12    their home.  That is a significant immediate punishment,
13    and not just the loss of some benefit at the end of the
14    road.  That is an immediate real thing, and not just for
15    things like you've absconded and maybe a month later, we
16    pick you up.  As the Court is aware, the sureties could
17    lose their security for almost any infraction of the
18    bail terms.  And that means allow -- you know, if he
19    does on his own, having nothing to do with them.  And,
20    of course, if they were to somehow be a participant,
21    that would we a new crime on their part, and these
22    people have a no criminal history.  The defendant's
23    uncle is a small business owner that makes a modest
24    amount of revenue and an even smaller amount of profit.
25    My guess is that he's a hardworking person that worked
```

1     very hard for the things that he has.  He's put his

2     faith in his nephew, at the very least just to obey the

3     terms of his bond.  And he's come here three times and

4     he's pledged both of his properties.  One is a rental

5     property and one is a -- a -- his residence.  So I don't

6     think that they -- the aunt and uncle who are here in

7     the Court today take those obligations lightly.  And all

8     of those together, any of the things that we can do,

9     restrictions, monitoring, supervision, those are things

10    that pretrial services is -- is very well adept at

11    doing.  And they're -- and as far as my clients are

12    concerned, they're very keen on reporting if there's

13    even a suggestion of violation.  And those things, in

14    combination, are just qualitatively different than any

15    diversion agreement or any like situation where you

16    don't have the types of monitoring you do.  And in state

17    court, a lot of the failures to appear, written

18    promises, those are things that just don't have the

19    supervision mechanism.  They need to wait until the

20    person commits another crime or violates in some

21    spectacular way to come back into contact with the

22    criminal justice system and then they violate.  And, of

23    course, I'm not making light of that.  I have multiple

24    people in diversion, and I hope they do well, but it is

25    just different than when you're closely supervised.  And

```
1    even in this court, we have differences in supervision.
2    There is pretrial supervision and intensive pretrial
3    supervision for defendants who may be a higher risk.
4    And I think those are sufficient, and they're
5    qualitatively different than the situations that the
6    Government has raised.
7              THE COURT:  Okay.  If we can have the victims
8    speak.  Do you want to have one at a time come up, and
9    then we can have them -- so they can speak at the podium
10   or at the witness chair.  The interpreter -- I assume
11   you brought an interpreter.
12             MR. BUTLER:  Yes, Your Honor.
13             THE COURT:  A court-certified interpreter.
14             MR. BUTLER:  Yes, Your Honor.
15             THE COURT:  Okay.  And the -- why don't we have
16   them come up to the witness chair.  That will be easier
17   for the interpreter to be on the side and they can
18   interpret it.  It will be easier.
19             MR. BUTLER:  Yes, Your Honor.
20             Your Honor, so the Court is clear, I don't
21   think that this witness needs the interpreter, but the
22   next one does.
23             THE COURT:  Oh, the next one does, okay.
24             THE COURTROOM DEPUTY:  Please state your name
25   and spell it for the record.
```

1          THE WITNESS:  Spell it?  My name is Yun Soo
2  Shin, Y-U-N.  S-O-O.  S-H-I-N.
3          THE COURT:  Okay.  Go ahead, Mr. Butler.
4          MR. BUTLER:  Can you just talk about your
5  experience with the defendant and your position on his
6  being released on pretrial supervision today.
7  A      Okay.  So I was threatened by him for a lot --
8  multiple times.
9          THE COURT:  Put the speaker closer to you.  You
10  can move.
11          MR. SHIN:  So I was threatened by him for --
12  multiple times, and I was actually attacked by him like
13  two years ago.  And yet, I'm still scared that same
14  thing is going to happen if he bails out.  And yeah, it
15  makes me nervous a lot.  So....
16          THE COURT:  Okay.
17          MR. BUTLER:  I just wanted to provide you the
18  avenue to be heard rather than a direct examination, but
19  if there's anything else you want to say about how this
20  experience has affected you, please do so.
21          MR. SHIN:  So back then when I -- when we're
22  trying to report all this incident to LAPD, I asked a
23  lot of my -- like, the people that was a victim -- and
24  the first thing they said was they don't want to report
25  with me, because they know that he's going to get away

```
 1    again.  So they were scared that if he gets out again,

 2    then they're going to be attacked or, you know, they're

 3    going to be threatened again.

 4              THE COURT:  You say "they," who are you talking

 5    about?

 6              MR. SHIN:  Oh, I'm talking about other victims,

 7    yeah.

 8              MR. SOLIS:  I'm going to object as hearsay as

 9    to what other people told him.

10              THE WITNESS:  The other victims that's getting

11    extortion and threatened by him.

12              MR. SOLIS:  And I'm going to object as to

13    hearsay and foundation.

14              THE COURT:  And it's noted for the record, but

15    it's just me here.  So it's fine.

16              MR. SOLIS:  Thank you, Your Honor.

17              THE COURT:  Go ahead.

18              MR. SHIN:  And still after the attack, I'm

19    still like scared.  Like, when there's a person running

20    like next to me, I'm still scared.  And I think I'll be

21    more scared if he gets bailed out.  Then I don't think

22    I'm going to be able to sleep at night.

23              THE COURT:  Okay.  Okay.  Thank you.

24              MR. BUTLER:  Thank you.

25              THE COURT:  Did you want to ask any questions?
```

```
1              MR. SOLIS:  No, thank you, Your Honor.

2              THE COURT:  Okay.  Thank you.

3              We'll bring up the next person.

4              THE COURTROOM DEPUTY:  If you can state your

5      name and spell it.

6              MR. LE:  J-O-O-H-U-N and last name is Le, L-E.

7              THE COURT:  Okay.  Mr. Butler, do you want to

8      get him started?

9              MR. BUTLER:  Yes.  Can you just tell us your

10     experience with the defendant?  What it's done to you,

11     how it's affected you, and what your opinion is on his

12     release today.

13             MR. LE:  Right now I'm living out of state.  I

14     am not in right now California since the incident.  I'm

15     in another state.  I'm running a small business, trying

16     to earn a living, and with my 12-year-old daughter and

17     my wife, we're all experiencing extreme suffering.  And

18     I have clients coming to see me, but I feel a sense of

19     terror and fear.  And at night, my family, like on the

20     daily, we experience a lot of dread and fear.

21             MR. BUTLER:  Can you just tell us why you left

22     California.

23             Mr. LE:  So Yoon Soo, who is sitting over there

24     since the attack, afterwards, as far as my text -- or

25     through text, VIN number, and my address and all of
```

1    that, sent me texts saying, "I know you have a

2    12-year-old daughter and wife.  I know your VIN number.

3    I know your home address.  And so I -- because of this,

4    these texts to me, I just cannot see a way of living in

5    this state.

6            MR. BUTLER:  Thank you.  And thank you for

7    being here.  This is your opportunity.  I don't have

8    anything else.  This is your opportunity.  I have

9    nothing else, but if you want to say anything else, this

10   is your time.

11           MR. LE:  I truly on a daily basis am suffering

12   a lot.  I even am experiencing panic disorder, which I

13   heretofore, did not have.  And if he is bailed out, my

14   whole family, I feel like will -- things will become

15   even more difficult for us.  And so now, like, what

16   we're doing at this time, we may have to stop that and

17   move to another state, and I am just pretty much filled

18   with dread.

19           MR. BUTLER:  Thank you.

20           MR. SOLIS:  No questions.  Thank you,

21   Your Honor.

22           THE COURT:  The witness is excused.  Okay.

23   Unless counsel have anything further, I'm going to take

24   the matter under submission at this point.  Anything

25   else?

1          MR. BUTLER:  No, Your Honor, I think the

2    Government put in our papers that if the Court were to

3    consider bail due to the dangerousness of the defendant,

4    we would ask that either a stay be granted, pending the

5    appeal or that the -- or that the defendant be ordered

6    continuing detained, pending the Government appeal.

7          THE COURT:  Okay.  Anything else?

8          MR. SOLIS:  Not on behalf of the defendant.  We

9    object to the stay.

10          THE COURT:  Okay.  Okay.  The matter is taken

11    under submission.

12          MR. BUTLER:  Thank you, Your Honor.

13            (Whereupon, proceeding adjourned.)

14                    - - -

15

16

17

18

19

20

21

22

23

24

25

1                     **C E R T I F I C A T E**

2

3

4

5      UNITED STATES OF AMERICA           :

6                    vs.                   :    No. CR 23-00149-FMO

7      DAEKUN CHO                          :

8

9

10     I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

11     UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

12     CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13     TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14     CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15     PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16     TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

17     OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18     FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

19     REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

20     REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

21

22     _____/S/_____          //___

23     MARIA R. BUSTILLOS                  DATE
       OFFICIAL REPORTER
24

25

## $

**$20,000** [1] - 22:6

## /

**/S** [1] - 31:22

## 1

**10-minute** [1] - 7:13
**11:02** [1] - 4:3
**12-year-old** [2] - 28:16, 29:2
**12254** [1] - 1:22
**12TH** [1] - 2:7
**13TH** [1] - 2:11
**1ST** [1] - 1:23

## 2

**20** [1] - 21:20
**2020** [1] - 12:22
**2023** [2] - 1:18, 4:1
**213** [1] - 1:24
**213)489-5880** [1] - 2:17
**213)894-5046** [1] - 2:12
**213)894-6495** [1] - 2:8
**23-00149-FMO** [3] - 1:10, 4:5, 31:6
**23679** [1] - 2:16
**28** [1] - 31:13

## 3

**3** [3] - 1:18, 4:1, 14:20
**312** [2] - 2:6, 2:11
**350** [1] - 1:23

## 4

**4** [1] - 3:2
**412** [1] - 2:16
**4455** [1] - 1:23

## 5

**5** [2] - 7:13, 14:20
**5-minute** [1] - 7:13

## 7

**753** [1] - 31:12

## 8

**894-2739** [1] - 1:24

## 9

**90012** [3] - 1:24, 2:7, 2:12
**91302** [1] - 2:17

## A

**A.M** [1] - 4:3
**abate** [1] - 5:24
**abiding** [1] - 14:8
**ability** [1] - 21:5
**able** [3] - 12:6, 20:20, 27:22
**ABOVE** [1] - 31:15
**ABOVE-ENTITLED** [1] - 31:15
**absconded** [1] - 23:15
**access** [2] - 12:7, 20:6
**accomplice** [2] - 20:18, 20:24
**accomplices** [1] - 10:10
**activity** [1] - 20:8
**actual** [2] - 5:1, 20:18
**additional** [2] - 12:20, 12:24
**address** [6] - 17:10, 18:17, 19:18, 20:2, 28:25, 29:3
**addressed** [1] - 12:22
**adept** [1] - 24:10
**adjourned** [1] - 30:13
**advance** [2] - 6:25, 7:4
**affected** [2] - 26:20, 28:11
**afterwards** [1] - 28:24
**ago** [1] - 26:13
**agree** [3] - 9:10, 9:18, 16:24
**agreed** [3] - 8:25, 15:22, 19:6
**agreement** [1] - 24:15
**ahead** [6] - 4:18, 19:10, 19:16, 19:20, 26:3, 27:17
**airport** [1] - 22:24
**allegation** [4] - 5:6, 7:3, 7:8, 7:11
**allegations** [5] - 7:10, 7:23, 8:16, 12:20, 16:20
**alleged** [1] - 19:23
**alleviate** [1] - 16:24
**allow** [2] - 13:8, 23:18
**allowing** [2] - 10:18, 20:6
**almost** [4] - 5:2, 5:20, 6:19, 23:17
**amenable** [2] - 11:1, 11:14
**AMERICA** [3] - 1:7, 2:4, 31:5
**America** [1] - 4:5

**amount** [2] - 23:24
**AND** [3] - 31:10, 31:13, 31:15
**AND/OR** [1] - 31:19
**ANGELES** [5] - 1:17, 1:24, 2:7, 2:12, 4:1
**announce** [1] - 8:6
**answer** [2] - 18:6, 21:13
**ANTHONY** [2] - 2:15, 2:15
**Anthony** [1] - 4:14
**ANY** [1] - 31:18
**anyway** [1] - 14:2
**APLC** [2] - 2:15
**appeal** [2] - 30:5, 30:6
**appear** [11] - 5:5, 6:1, 6:2, 11:17, 21:21, 21:22, 21:25, 22:3, 22:4, 24:17
**applies** [1] - 18:23
**apply** [1] - 18:1
**appreciate** [1] - 16:18
**apprehending** [1] - 8:4
**apprehension** [1] - 7:9
**approach** [1] - 18:6
**ARE** [1] - 31:19
**arguably** [1] - 16:11
**argue** [2] - 4:25, 8:20
**argument** [3] - 18:22, 18:24
**arguments** [1] - 18:8
**arm** [2] - 7:21, 7:22
**armed** [2] - 7:11, 7:19
**arrest** [4] - 7:7, 7:9, 8:5, 12:20
**arrested** [3] - 8:4, 11:3, 20:7
**arrests** [2] - 5:12, 5:15
**assault** [1] - 20:18
**assaulted** [2] - 10:6, 10:14
**assaults** [2] - 10:15, 12:9
**assert** [1] - 4:10
**assets** [1] - 9:3
**associated** [2] - 12:11
**assume** [3] - 13:11, 15:5, 25:10
**AT** [1] - 4:3
**attack** [2] - 27:18, 28:24
**attacked** [3] - 10:5, 26:12, 27:2
**attacks** [3] - 12:16, 12:17, 14:11
**attempt** [1] - 11:10
**attempted** [1] - 11:21
**ATTORNEY** [2] - 2:5, 2:10
**audience** [1] - 16:6
**AUGUST** [2] - 1:18, 4:1

**aunt** [5] - 6:5, 6:8, 8:24, 15:19, 24:6
**avenue** [1] - 26:18
**aware** [3] - 15:5, 20:12, 23:16
**awareness** [1] - 19:25

## B

**backstop** [1] - 22:16
**bail** [6] - 4:17, 18:2, 18:5, 21:18, 23:18, 30:3
**BAIL** [2] - 1:16, 3:2
**bailed** [2] - 27:21, 29:13
**bails** [1] - 26:14
**baseball** [1] - 10:12
**basis** [1] - 29:11
**bat** [2] - 7:22, 10:13
**bathroom** [1] - 12:6
**bats** [1] - 13:3
**beat** [1] - 10:12
**become** [1] - 29:14
**BEHALF** [2] - 2:4, 2:14
**behalf** [3] - 4:8, 4:14, 30:8
**behave** [1] - 18:12
**behavior** [3] - 16:9, 18:15, 20:11
**behaviors** [1] - 10:5
**belief** [1] - 15:7
**bench** [2] - 21:23, 22:5
**bench-warranted** [2] - 21:23, 22:5
**benefit** [3] - 14:4, 14:7, 23:13
**between** [1] - 15:3
**bit** [2] - 7:12, 7:15
**bond** [6] - 6:9, 9:2, 9:5, 22:6, 22:17, 24:3
**bragged** [1] - 10:16
**bragging** [1] - 12:18
**briefed** [1] - 9:20
**briefing** [4] - 10:1, 10:9, 13:2, 21:3
**bring** [1] - 28:3
**broad** [1] - 19:3
**broadcast** [1] - 10:15
**brought** [5] - 5:14, 10:9, 10:10, 20:17, 25:11
**bus** [1] - 22:25
**business** [2] - 23:23, 28:15
**BUSTILLOS** [3] - 1:21, 31:10, 31:23
**Butler** [2] - 4:8, 28:7
**butler** [2] - 18:16, 26:3
**BUTLER** [25] - 2:5, 4:7, 9:10, 9:14, 9:17, 11:6, 13:19, 14:22, 15:1, 19:2, 19:6,

19:21, 21:15, 25:12, 25:14, 25:19, 26:4, 26:17, 27:24, 28:9, 28:21, 29:6, 29:19, 30:1, 30:12
**BY** [3] - 2:5, 2:10, 2:15

## C

**C.S.R** [1] - 1:22
**CA** [2] - 2:7, 2:12
**CALABASA** [1] - 2:16
**CALABASAS** [1] - 2:17
**California** [3] - 5:21, 28:14, 28:22
**CALIFORNIA** [6] - 1:2, 1:17, 1:24, 2:17, 4:1, 31:12
**cam** [1] - 11:23, 12:16
**cannot** [1] - 29:4
**carrying** [1] - 11:11
**case** [9] - 5:7, 5:16, 6:18, 6:19, 8:15, 8:18, 11:15, 18:9, 21:23
**cases** [7] - 5:14, 11:8, 21:3, 21:25, 22:17
**cell** [3] - 12:16, 13:3, 16:15
**CENTRAL** [2] - 1:2, 31:11
**certainly** [2] - 9:5, 11:2
**certified** [1] - 25:13
**CERTIFY** [1] - 31:12
**chair** [2] - 25:10, 25:16
**characteristics** [2] - 10:24, 13:5
**CHARGED** [1] - 31:18
**charged** [3] - 5:16, 6:17, 10:4
**charges** [3] - 11:10, 14:1, 15:13
**check** [1] - 22:20
**Cho** [4] - 4:6, 4:14, 5:1, 7:9
**CHO** [3] - 1:12, 2:15, 31:7
**Cho's** [1] - 8:21
**choose** [1] - 18:22
**chooses** [4] - 17:20, 17:24, 18:4, 18:14
**chose** [1] - 14:9
**CIRCUIT** [1] - 31:18
**circumstance** [1] - 18:13
**circumstances** [1] - 9:5
**citizen** [1] - 14:8
**citizenship** [2] - 9:21, 9:22
**clean** [1] - 15:8
**clear** [1] - 25:20

**clearly** [1] - 20:8
**clients** [3] - 22:22, 24:11, 28:18
**close** [3] - 16:5, 22:24, 22:25
**closely** [1] - 24:25
**closer** [2] - 22:1, 26:9
**closest** [2] - 16:5, 23:11
**CODE** [1] - 31:13
**code** [1] - 5:3
**combination** [1] - 24:14
**coming** [4] - 7:14, 12:24, 20:22, 28:18
**commit** [1] - 14:9
**commits** [1] - 24:20
**committed** [2] - 14:2, 19:15
**committing** [3] - 11:3, 13:23, 21:4
**communicate** [1] - 16:17
**community** [13] - 7:18, 9:6, 9:19, 9:25, 10:4, 10:7, 13:7, 13:12, 13:18, 13:21, 16:20, 18:4, 18:10
**complete** [1] - 14:8
**completed** [1] - 11:7
**completely** [1] - 14:5
**compliance** [3] - 19:4, 19:9, 20:4
**comply** [2] - 7:16, 14:19
**computer** [2] - 16:16, 23:1
**concern** [1] - 16:20
**concerned** [2] - 8:3, 24:12
**concerns** [5] - 6:22, 15:16, 16:19, 16:24, 16:25
**condition** [3] - 5:25, 18:25, 22:23
**conditions** [21] - 13:14, 13:16, 14:19, 16:12, 16:23, 17:11, 17:12, 17:14, 17:18, 17:22, 17:24, 18:3, 18:10, 18:17, 18:19, 18:21, 20:2, 21:12, 22:11, 23:6
**conduct** [1] - 14:19
**CONFERENCE** [2] - 31:17, 31:20
**confinement** [1] - 17:19
**confirming** [3] - 12:8, 12:9
**conform** [1] - 16:8
**CONFORMANCE** [2] - 31:16, 31:19
**consequence** [1] - 6:20
**consider** [2] - 5:14,

30:3
**consideration** [2] - 6:17, 16:2
**considering** [1] - 9:4
**constitutes** [1] - 5:19
**contact** [3] - 9:24, 16:17, 24:21
**continue** [2] - 18:14, 20:25
**continuing** [2] - 18:12, 30:6
**control** [1] - 10:3
**controlled** [2] - 10:5, 11:24
**convictions** [1] - 11:9
**cops** [1] - 11:24
**CORRECT** [1] - 31:14
**correct** [2] - 16:19, 20:3
**corroborated** [1] - 12:15
**corroborates** [1] - 13:4
**corroborative** [1] - 13:2
**Counsel** [1] - 9:13
**counsel** [3] - 12:21, 13:16, 29:23
**country** [2] - 15:21, 16:6
**course** [2] - 23:20, 24:23
**court** [15] - 4:21, 5:9, 6:3, 6:19, 9:11, 9:12, 15:6, 16:7, 22:13, 22:18, 22:24, 23:3, 24:17, 25:1, 25:13
**COURT** [42] - 1:1, 1:21, 4:3, 4:12, 4:16, 9:9, 9:12, 9:16, 11:5, 13:10, 14:21, 14:24, 17:5, 17:10, 17:17, 17:21, 18:1, 18:16, 19:5, 19:7, 19:19, 21:14, 21:16, 25:7, 25:13, 25:15, 25:23, 26:3, 26:9, 26:16, 27:4, 27:14, 27:17, 27:23, 27:25, 28:2, 28:7, 29:22, 30:7, 30:10, 31:10, 31:11
**Court** [14] - 5:13, 9:5, 13:8, 15:5, 16:12, 16:19, 17:3, 20:5, 22:9, 22:10, 23:16, 24:7, 25:20, 30:2
**Court's** [1] - 6:3
**court-certified** [1] - 25:13
**COURTHOUSE** [1] - 1:22
**COURTROOM** [3] - 4:4, 25:24, 28:4
**courtroom** [2] - 4:9, 6:23
**coworkers** [1] - 10:11

**CR** [2] - 1:10, 4:5, 31:6
**created** [1] - 10:7
**crime** [6] - 6:18, 13:6, 14:10, 21:4, 23:21, 24:20
**crimes** [9] - 10:7, 10:8, 11:3, 13:24, 14:2, 14:5, 14:9, 19:22, 20:2
**criminal** [10] - 5:2, 5:5, 5:17, 11:1, 19:7, 19:10, 19:25, 20:8, 23:22, 24:22
**current** [1] - 5:10
**custody** [1] - 4:15

## D

**DAEKUN** [3] - 1:12, 2:15, 31:7
**daily** [2] - 28:20, 29:11
**damning** [1] - 12:8
**danger** [16] - 6:21, 7:17, 8:17, 8:21, 9:19, 9:25, 10:7, 13:6, 13:12, 13:18, 17:1, 17:15, 18:3, 18:10, 18:20
**dangerousness** [1] - 30:3
**dash** [2] - 11:23, 12:16
**data** [2] - 12:16, 13:3
**DATE** [1] - 31:23
**daughter** [2] - 28:16, 29:2
**de** [1] - 4:21
**deal** [4] - 13:15, 13:17, 17:14, 18:3
**defendant** [24] - 7:1, 9:8, 10:2, 10:20, 10:25, 12:18, 13:5, 15:11, 17:4, 17:20, 17:23, 18:9, 18:12, 18:13, 18:23, 19:5, 20:4, 20:7, 21:4, 26:5, 28:10, 30:3, 30:5, 30:8
**defendant's** [4] - 7:6, 10:25, 19:22, 23:22
**Defendants** [1] - 1:13
**defendants** [1] - 25:3
**DEFENDANTS** [1] - 2:14
**Defense** [5] - 6:6, 9:11, 12:21, 13:16, 23:6
**DEJ** [1] - 5:4
**delay** [3] - 7:13, 8:4
**deportation** [1] - 14:1
**DEPOSIT** [1] - 31:19
**DEPUTY** [4] - 4:4, 25:24, 28:4
**destruct** [1] - 11:11
**detained** [1] - 30:6
**detection** [1] - 11:22

**detention** [5] - 4:20, 6:7, 8:22, 15:16, 17:13
**determined** [1] - 5:8
**difference** [1] - 15:3
**differences** [1] - 25:1
**different** [6] - 22:12, 22:18, 23:4, 24:14, 24:25, 25:5
**difficult** [2] - 8:18, 29:15
**direct** [1] - 26:18
**directing** [1] - 20:20
**discount** [1] - 5:20
**discussing** [1] - 20:21
**disengaged** [1] - 11:21
**disincentivize** [1] - 14:17
**dismissal** [1] - 5:4
**dismissed** [1] - 5:15
**disorder** [1] - 29:12
**DISTRICT** [5] - 1:1, 1:2, 1:5, 31:11
**diversion** [18] - 5:4, 11:2, 11:5, 11:7, 11:8, 14:3, 14:4, 14:8, 15:3, 15:7, 15:25, 19:11, 19:15, 22:8, 22:17, 24:15, 24:24
**diversionary** [1] - 14:7
**diverted** [2] - 11:9, 11:13
**DIVISION** [1] - 1:3
**DO** [1] - 31:12
**docket** [1] - 5:9
**domestic** [1] - 7:25
**done** [4] - 14:25, 16:14, 21:6, 28:10
**down** [1] - 10:9
**dread** [2] - 28:20, 29:18
**drove** [1] - 22:2
**drug** [2] - 5:4, 6:1
**due** [1] - 30:3
**DUI** [1] - 5:7
**during** [3] - 11:17, 11:24, 20:9

## E

**early** [1] - 8:5
**earn** [1] - 28:16
**easier** [2] - 25:16, 25:18
**easily** [1] - 21:8
**either** [4] - 7:8, 10:12, 15:7, 30:4
**electronic** [4] - 8:23, 15:17, 22:21, 22:23
**eliminate** [1] - 9:6
**enable** [1] - 6:2
**end** [3] - 22:14, 23:5, 23:13

**enforcement** [12] - 7:16, 10:22, 10:24, 11:18, 11:21, 12:1, 12:2, 12:4, 12:6, 14:17, 19:25, 21:9
**engaging** [2] - 15:4, 18:14
**English** [1] - 21:8
**ensure** [2] - 20:20, 20:21
**entirely** [1] - 5:20
**ENTITLED** [1] - 31:15
**entry** [1] - 5:3
**equity** [1] - 8:25
**erased** [1] - 14:5
**escape** [1] - 11:18
**ESQ** [3] - 2:6, 2:10, 2:15
**established** [1] - 18:20
**evade** [3] - 11:21, 12:3, 19:24
**evidence** [6] - 5:8, 5:15, 11:11, 12:13, 13:1, 13:4
**exacerbated** [1] - 7:2
**exact** [2] - 20:10, 21:1
**exactly** [1] - 21:6
**exaggeration** [1] - 7:15
**examination** [1] - 26:18
**example** [1] - 20:5
**excused** [1] - 29:22
**executed** [1] - 10:2
**exist** [1] - 11:13
**expected** [1] - 7:18
**experience** [4] - 26:5, 26:20, 28:10, 28:20
**experiencing** [2] - 28:17, 29:12
**explain** [2] - 13:15, 18:2
**explanation** [1] - 18:18
**extent** [2] - 7:15, 7:17
**extort** [1] - 10:3
**extortion** [7] - 11:25, 12:3, 12:24, 14:11, 19:24, 21:1, 27:11
**extortions** [1] - 12:9
**extreme** [1] - 28:17

## F

**fact** [5] - 12:1, 15:12, 15:13, 15:25, 19:14
**failed** [3] - 21:25, 22:3, 22:4
**failures** [3] - 21:21, 21:22, 24:17
**faith** [4] - 19:3, 19:9, 20:4, 24:2
**family** [2] - 28:19, 29:14

**far** [4] - 8:3, 16:14, 24:11, 28:24
**fashion** [1] - 9:5
**fashioned** [2] - 13:14, 16:23
**fear** [7] - 7:1, 7:2, 10:2, 20:25, 21:10, 28:19, 28:20
**federal** [3] - 6:19, 18:5, 22:13
**FEE** [1] - 31:18
**fee** [1] - 12:3
**fees** [1] - 10:4
**FEES** [1] - 31:18
**felonies** [1] - 7:24
**FERNANDO** [1] - 1:5
**few** [1] - 8:10
**fighting** [2] - 13:25, 14:1
**figure** [1] - 20:15
**file** [1] - 5:11
**filed** [1] - 6:25
**filled** [1] - 29:17
**finally** [1] - 12:13
**fine** [1] - 27:15
**firearm** [5] - 8:2, 11:11, 11:20, 12:21, 12:23
**firearms** [3] - 7:6, 7:10, 7:21
**first** [4] - 13:13, 15:2, 22:19, 26:24
**five** [2] - 13:23, 20:10
**flee** [1] - 9:3
**flight** [15] - 4:24, 4:25, 5:2, 5:20, 5:22, 6:4, 6:15, 6:16, 8:21, 9:7, 9:11, 9:17, 11:16, 16:25, 21:24
**FLOOR** [2] - 2:7, 2:11
**follow** [1] - 6:3
**footage** [2] - 11:23, 12:17
**FOR** [3] - 31:10, 31:11, 31:18
**FOREGOING** [1] - 31:13
**FORMAT** [1] - 31:16
**forth** [6] - 10:1, 10:8, 10:22, 12:24, 13:17, 21:12
**foundation** [1] - 27:13
**furthers** [1] - 21:10

### G

**general** [1] - 16:21
**given** [3] - 9:20, 9:21, 18:8
**Government** [17] - 6:12, 6:25, 7:4, 7:5, 7:12, 8:14, 9:10, 9:18, 9:19, 9:24, 13:7, 13:20, 16:25, 18:8, 25:6, 30:2,

30:6
**Government's** [3] - 15:16, 16:18, 21:10
**granted** [1] - 30:4
**great** [1] - 14:7
**grown** [1] - 10:21
**guess** [1] - 23:25
**guns** [2] - 7:19, 7:24

### H

**happy** [1] - 21:13
**hard** [1] - 24:1
**hardworking** [1] - 23:25
**head** [1] - 12:23
**health** [2] - 6:10, 7:25
**heard** [3] - 4:11, 14:23, 26:18
**hearing** [7] - 5:6, 6:25, 7:4, 8:19, 15:11, 16:7, 18:2
**HEARING** [2] - 1:16, 3:2
**hearings** [1] - 21:18
**hearsay** [2] - 27:8, 27:13
**Hedoff** [1] - 17:8
**HELD** [1] - 31:15
**HEREBY** [1] - 31:12
**heretofore** [1] - 29:13
**hid** [1] - 20:9
**hidden** [1] - 12:5
**hide** [1] - 20:14
**higher** [1] - 25:3
**himself** [5] - 7:11, 7:19, 7:21, 7:22, 12:18
**history** [9] - 5:2, 5:5, 5:17, 8:1, 8:21, 11:1, 13:5, 20:1, 23:22
**histrionic** [1] - 7:12
**home** [12] - 6:7, 6:8, 8:22, 15:16, 15:22, 15:23, 15:24, 16:4, 17:12, 23:12, 29:3
**Honor** [23] - 4:7, 4:13, 9:15, 13:19, 14:22, 14:23, 17:8, 17:16, 19:2, 19:4, 19:6, 19:17, 19:21, 21:13, 25:12, 25:14, 25:19, 25:20, 27:16, 28:1, 29:21, 30:1, 30:12
**HONORABLE** [1] - 1:5
**hope** [2] - 5:13, 24:24
**horrendous** [1] - 10:8
**hunted** [1] - 10:9

### I

**idea** [2] - 11:14, 14:18
**illegal** [1] - 18:14
**imagination** [1] -

16:13
**immediate** [2] - 23:12, 23:14
**immediately** [1] - 7:16
**immense** [1] - 14:4
**impede** [1] - 21:5
**impose** [1] - 16:12
**imposed** [3] - 13:17, 17:12, 18:11
**IN** [5] - 4:3, 31:10, 31:15, 31:16, 31:19
**inapposite** [1] - 16:2
**incarcerated** [1] - 10:20
**incarceration** [1] - 20:23
**incident** [2] - 26:22, 28:14
**include** [1] - 22:8
**including** [1] - 13:3
**inculpatory** [1] - 12:8
**indicated** [1] - 7:5
**indicates** [3] - 4:24, 5:11, 5:18
**indictment** [1] - 8:16
**individual** [1] - 8:20
**information** [1] - 15:7
**infraction** [2] - 5:3, 23:17
**initial** [1] - 7:3
**instances** [1] - 20:17
**instructed** [1] - 20:18
**insufficient** [2] - 17:22, 19:1
**intend** [1] - 4:10
**intensive** [1] - 25:2
**intermediary** [1] - 12:3
**international** [1] - 6:13
**interpret** [1] - 25:18
**interpreter** [5] - 25:10, 25:11, 25:13, 25:17, 25:21
**intimidate** [1] - 10:15
**intimidated** [3] - 14:14, 15:14, 21:9
**intimidating** [2] - 11:22, 21:5
**intimidation** [4] - 10:3, 14:11, 19:24, 21:1
**irrespective** [1] - 19:13
**IS** [2] - 31:13, 31:16
**issue** [7] - 6:15, 11:16, 13:18, 13:24, 17:14, 21:17
**issues** [4] - 4:25, 6:10, 7:25
**item** [1] - 4:4
**itself** [3] - 5:23, 13:7, 14:10

### J

**JAMES** [1] - 2:5

**jarring** [1] - 8:6
**JENA** [1] - 2:10
**Jena** [1] - 4:8
**JOOHUN** [1] - 28:6
**judge** [1] - 9:14
**Judge** [5] - 4:20, 5:6, 6:6, 7:5, 15:11
**JUDGE** [1] - 1:5
**judge's** [1] - 22:10
**JUDICIAL** [2] - 31:17, 31:20
**justice** [1] - 24:22

### K

**karaoke** [1] - 10:4
**karaoke's** [1] - 12:23
**keen** [1] - 24:12
**keep** [1] - 15:8
**Kevin** [1] - 4:8
**KEVIN** [1] - 2:5
**kill** [3] - 10:14, 12:10, 12:19
**kind** [9] - 5:17, 5:18, 5:22, 8:13, 16:2, 16:16, 16:23, 18:13, 22:16
**knowledge** [1] - 14:17
**Korea** [1] - 9:23
**Koreatown** [1] - 10:4

### L

**L-E** [1] - 28:6
**L.A** [1] - 5:3
**lack** [1] - 19:25
**LAPD** [1] - 26:22
**last** [3] - 13:23, 14:20, 28:6
**law** [15] - 7:16, 10:22, 10:23, 11:18, 11:21, 12:1, 12:2, 12:4, 12:6, 14:8, 14:17, 19:24, 21:9, 22:10, 23:4
**law-abiding** [1] - 14:8
**lawfully** [1] - 8:1
**LE** [4] - 28:6, 28:13, 28:23, 29:11
**Le** [1] - 28:6
**least** [5] - 12:22, 15:11, 15:20, 20:17, 24:2
**left** [1] - 28:21
**legal** [2] - 6:14, 13:25
**length** [1] - 9:20
**LESS** [1] - 31:18
**light** [2] - 22:9, 24:23
**lightly** [1] - 24:7
**line** [2] - 14:15, 22:19
**list** [1] - 10:21
**literally** [2] - 10:16, 12:17
**live** [2] - 6:6, 9:1

**lived** [1] - 9:2
**living** [5] - 6:7, 8:23, 28:13, 28:16, 29:4
**loaded** [2] - 11:11, 11:20
**location** [1] - 20:9
**locations** [1] - 10:11
**look** [2] - 11:18, 22:1
**looked** [1] - 11:19
**LOS** [5] - 1:17, 1:24, 2:7, 2:12, 4:1
**lose** [4] - 15:21, 16:4, 23:11, 23:17
**loss** [1] - 23:13
**lost** [1] - 22:7
**LPR** [1] - 9:21

### M

**MACCABE** [1] - 2:10
**magistrate** [3] - 9:11, 9:12, 9:14
**MARIA** [3] - 1:21, 31:10, 31:23
**marijuana** [4] - 5:19, 5:21, 5:23, 23:8
**mask** [1] - 13:3
**matter** [4] - 4:23, 5:12, 29:24, 30:10
**MATTER** [1] - 31:15
**McCabe** [1] - 4:8
**mean** [1] - 16:22
**meaning** [1] - 11:9
**means** [2] - 23:18
**mechanism** [1] - 24:19
**members** [1] - 13:21
**mental** [2] - 6:10, 7:25
**mentioned** [2] - 19:4, 20:5
**merely** [1] - 23:4
**messages** [2] - 12:8, 12:17
**might** [1] - 23:2
**minimal** [1] - 11:2
**minute** [1] - 20:10
**minutes** [1] - 8:10
**mitigated** [1] - 8:22
**modest** [1] - 23:23
**money** [1] - 22:7
**monitor** [5] - 8:23, 15:17, 15:24, 22:21, 22:23
**monitoring** [5] - 17:13, 22:16, 22:19, 24:9, 24:16
**month** [1] - 23:15
**monthly** [1] - 10:4
**morning** [4] - 4:7, 4:13, 8:5, 17:7
**most** [7] - 12:7, 14:10, 15:15, 15:20, 16:11, 17:3, 22:17
**Motorola** [2] - 12:5, 12:12

**move** [2] - 26:10, 29:17
**MR** [43] - 4:7, 4:13, 4:19, 9:10, 9:14, 9:17, 11:6, 13:19, 14:22, 14:23, 15:1, 15:2, 19:2, 19:6, 19:17, 19:21, 21:15, 21:17, 25:12, 25:14, 25:19, 26:4, 26:11, 26:17, 26:21, 27:6, 27:8, 27:12, 27:16, 27:18, 27:24, 28:1, 28:6, 28:9, 28:13, 28:21, 29:6, 29:11, 29:19, 29:20, 30:1, 30:8, 30:12
**multiple** [6] - 10:6, 11:18, 20:7, 24:23, 26:8, 26:12
**municipal** [1] - 5:3

**N**

**name** [4] - 25:24, 26:1, 28:5, 28:6
**native** [1] - 21:7
**nature** [7] - 10:6, 10:24, 13:6, 14:10, 15:13, 19:23
**nearly** [1] - 8:25
**need** [2] - 18:18, 24:19
**needs** [1] - 25:21
**nephew** [1] - 24:2
**nervous** [1] - 26:15
**never** [2] - 5:14, 5:15
**new** [1] - 23:21
**next** [5] - 13:14, 25:22, 25:23, 27:20, 28:3
**night** [2] - 27:22, 28:19
**nobody** [1] - 18:5
**noncitizens** [1] - 21:8
**none** [2] - 17:11, 17:14
**normal** [1] - 6:17
**NORTH** [2] - 2:6, 2:11
**noted** [1] - 27:14
**nothing** [5] - 7:22, 17:25, 20:15, 23:19, 29:9
**noticed** [1] - 11:25
**novo** [1] - 4:21
**number** [5] - 4:4, 6:22, 12:10, 28:25, 29:2
**numerous** [1] - 5:20

**O**

**obey** [4] - 22:10, 22:14, 23:4, 24:2
**object** [3] - 27:8, 27:12, 30:9
**obligations** [1] - 24:7

**obvious** [2] - 6:17, 17:21
**obviously** [2] - 8:18, 18:17
**occasional** [2] - 5:19, 5:24
**occur** [1] - 14:15
**OF** [15] - 1:2, 1:7, 1:15, 2:4, 2:4, 2:9, 2:14, 31:5, 31:11, 31:14, 31:17, 31:20
**offense** [1] - 7:9
**offer** [3] - 15:6, 15:23, 17:4
**offered** [1] - 15:14
**OFFICE** [2] - 2:4, 2:9
**officer** [3] - 17:6, 22:2, 22:20
**OFFICER** [5] - 17:7, 17:16, 17:18, 17:23, 18:7
**OFFICIAL** [3] - 1:21, 31:10, 31:23
**often** [1] - 21:7
**OLGUIN** [1] - 1:5
**ON** [2] - 2:4, 2:14
**one** [15] - 6:23, 7:18, 7:21, 9:1, 12:22, 13:10, 16:1, 20:4, 20:8, 20:17, 24:4, 24:5, 25:8, 25:22, 25:23
**ones** [1] - 18:11
**opinion** [1] - 28:11
**opportunity** [2] - 29:7, 29:8
**opposed** [1] - 16:10
**order** [3] - 4:20, 22:9, 22:10
**ordered** [2] - 5:25, 30:5
**orders** [2] - 6:3, 7:16
**outside** [1] - 20:11
**own** [1] - 23:19
**owner** [1] - 23:23
**owning** [1] - 7:23

**P**

**PAGE** [2] - 3:2, 31:16
**panic** [1] - 29:12
**paper** [1] - 22:2
**papers** [1] - 30:2
**part** [1] - 23:21
**participant** [1] - 23:20
**particular** [5] - 8:19, 9:7, 16:22, 18:9, 19:22
**particularly** [2] - 6:22, 18:11
**party** [1] - 16:17
**passports** [2] - 6:11, 9:3
**pattern** [1] - 10:2
**pay** [1] - 12:2

**payment** [1] - 11:25
**pending** [2] - 30:4, 30:6
**people** [11] - 5:21, 10:16, 10:17, 11:23, 12:19, 14:13, 23:11, 23:22, 24:24, 26:23, 27:9
**permanent** [2] - 6:14, 13:25
**perpetuating** [1] - 21:2
**person** [4] - 23:25, 24:20, 27:19, 28:3
**perspective** [1] - 19:3
**persuaded** [1] - 21:9
**phone** [11] - 12:5, 12:7, 12:12, 16:15, 17:13, 20:6, 20:9, 20:13
**phones** [1] - 20:7
**pick** [1] - 23:16
**piece** [1] - 22:2
**places** [2] - 10:18
**Plaintiffs** [1] - 1:8
**PLAINTIFFS** [1] - 2:4
**plead** [2] - 15:7, 15:8
**pleading** [2] - 6:24, 7:3
**pledged** [1] - 24:4
**podium** [1] - 25:9
**point** [2] - 11:12, 29:24
**pointed** [1] - 12:23
**police** [3] - 8:12, 14:14
**poses** [1] - 18:9
**position** [1] - 26:5
**possess** [1] - 8:2
**possession** [5] - 5:4, 6:12, 7:7, 7:20
**potential** [1] - 6:20
**practice** [1] - 15:6
**pre** [1] - 4:22
**present** [3] - 4:9, 4:14, 16:20
**presented** [1] - 18:8
**presentence** [1] - 4:22
**PRESIDING** [1] - 1:5
**presumably** [1] - 13:22
**Pretrial** [7] - 4:23, 5:17, 15:4, 17:5, 17:8, 20:12, 20:19
**pretrial** [9] - 15:10, 21:11, 21:18, 21:19, 22:19, 24:10, 25:2, 26:6
**PRETRIAL** [5] - 17:7, 17:16, 17:18, 17:23, 18:7
**pretty** [2] - 19:11, 29:17
**prevent** [2] - 18:12, 18:13
**prison** [2] - 6:18,

17:19
**Probation** [1] - 17:8
**problem** [1] - 13:22
**problems** [1] - 6:1
**proceeding** [1] - 30:13
**proceedings** [1] - 9:22
**PROCEEDINGS** [2] - 1:15, 31:15
**process** [1] - 14:9
**profit** [1] - 23:24
**prohibited** [1] - 7:23
**prohibiting** [1] - 21:4
**promise** [2] - 22:4, 22:13, 23:4
**promises** [1] - 24:18
**properties** [1] - 24:4
**property** [1] - 24:5
**proposal** [1] - 6:6
**proposed** [2] - 17:2, 17:12
**protect** [1] - 9:6
**provide** [1] - 26:17
**pulled** [1] - 22:1
**punched** [1] - 10:13
**punishment** [1] - 23:12
**punishments** [1] - 23:5
**purposes** [1] - 13:11
**PURSUANT** [1] - 31:12
**put** [10] - 8:25, 10:1, 10:8, 10:22, 13:2, 14:12, 21:2, 24:1, 26:9, 30:2

**Q**

**qualitative** [1] - 15:2
**qualitatively** [4] - 22:12, 23:3, 24:14, 25:5
**questions** [4] - 13:8, 21:13, 27:25, 29:20

**R**

**raised** [1] - 25:6
**rang** [1] - 23:1
**rather** [2] - 4:22, 26:18
**real** [3] - 6:15, 7:17, 23:14
**really** [11] - 5:16, 6:15, 8:9, 8:11, 8:12, 8:15, 15:19, 16:25, 19:12, 19:16
**reason** [1] - 8:1
**record** [6] - 14:6, 19:7, 19:8, 19:10, 25:25, 27:14
**reduce** [1] - 9:7
**REDUCTION** [1] - 31:19
**regard** [3] - 6:16, 6:21,

9:7
**regardless** [1] - 21:11
**REGULATIONS** [2] - 31:16, 31:20
**relatives** [5] - 9:23, 13:21, 15:20, 16:4, 16:5
**release** [3] - 6:1, 17:4, 28:12
**released** [2] - 7:1, 26:6
**relevant** [1] - 11:14
**relies** [1] - 9:25
**rely** [3] - 9:17, 19:3, 20:3
**remand** [1] - 23:10
**remarks** [1] - 5:23
**removable** [1] - 14:2
**removal** [1] - 9:22
**rental** [1] - 24:4
**report** [10] - 4:23, 4:24, 5:10, 5:18, 5:23, 21:18, 21:19, 26:22, 26:24
**REPORTED** [1] - 31:14
**REPORTER** [3] - 1:21, 31:10, 31:23
**REPORTER'S** [1] - 1:15
**reporting** [1] - 24:12
**represented** [1] - 13:6
**residence** [6] - 6:8, 7:14, 8:8, 9:1, 15:21, 24:5
**resident** [2] - 6:14, 13:25
**resistance** [1] - 8:13
**responsible** [1] - 8:23
**restrict** [1] - 16:15
**restrictions** [2] - 17:2, 24:9
**restrictive** [2] - 16:11, 17:3
**result** [1] - 20:1
**revenue** [1] - 23:24
**REVIEW** [2] - 1:16, 3:2
**review** [3] - 4:17, 4:19, 4:21
**reviewed** [1] - 4:22
**reward** [2] - 22:14, 23:5
**risk** [14] - 4:24, 4:25, 5:2, 5:20, 5:22, 6:4, 6:15, 6:16, 8:21, 9:7, 9:20, 16:25, 21:24, 25:3
**ROAD** [1] - 2:16
**road** [1] - 23:14
**room** [1] - 11:20
**running** [2] - 27:19, 28:15

**S**

**S-H-I-N** [1] - 26:2
**S-O-O** [1] - 26:2
**safe** [1] - 10:23
**safety** [1] - 11:20
**satisfy** [1] - 15:15
**scared** [5] - 26:13, 27:1, 27:19, 27:20, 27:21
**scheme** [2] - 14:16, 21:1
**scope** [1] - 20:11
**second** [1] - 11:19
**secondary** [2] - 9:18, 17:1
**SECTION** [1] - 31:12
**secure** [2] - 6:9, 9:2
**security** [3] - 15:23, 16:3, 23:17
**see** [3] - 6:21, 28:18, 29:4
**seem** [1] - 6:10
**seized** [1] - 6:11
**sense** [1] - 28:18
**sensitive** [2] - 6:22, 15:12
**sent** [1] - 29:1
**sentence** [4] - 11:2, 11:5, 14:3, 14:5
**sentenced** [1] - 11:7
**sentences** [1] - 14:7
**series** [2] - 13:23, 22:18
**services** [4] - 21:18, 21:19, 22:20, 24:10
**Services** [6] - 15:4, 15:10, 17:5, 17:9, 20:12, 20:19
**Services'** [2] - 4:23, 5:18
**SESSION** [1] - 4:3
**set** [2] - 13:17, 21:12
**several** [3] - 10:21, 14:16, 21:3
**severe** [1] - 23:7
**sheet** [1] - 5:9
**SHIN** [4] - 26:11, 26:21, 27:6, 27:18
**Shin** [1] - 26:2
**shot** [1] - 17:1
**show** [1] - 10:25
**showing** [1] - 13:12
**side** [1] - 25:17
**signed** [1] - 22:2
**significant** [8] - 5:1, 5:17, 6:4, 9:3, 15:20, 18:10, 19:12, 23:12
**single** [3] - 6:18, 6:19, 18:2
**site** [2] - 12:16, 13:3
**sitting** [1] - 28:23
**situation** [1] - 24:15
**situations** [1] - 25:5

**sleep** [2] - 8:9, 27:22
**small** [2] - 23:23, 28:15
**smaller** [1] - 23:24
**smoke** [1] - 5:21
**so...** [1] - 26:15
**socking** [2] - 10:16, 12:19
**SOLIS** [14] - 2:15, 2:15, 4:13, 4:19, 14:23, 15:2, 19:17, 21:17, 27:8, 27:12, 27:16, 28:1, 29:20, 30:8
**Solis** [4] - 4:14, 4:18, 19:13, 21:16
**someone** [2] - 12:18, 23:9
**somewhat** [1] - 11:4
**Soo** [2] - 26:1, 28:23
**sort** [4] - 12:14, 14:15, 14:17, 21:6
**source** [1] - 8:16
**Southern** [1] - 5:21
**speaker** [1] - 26:9
**speakers** [1] - 21:8
**specific** [2] - 18:17, 21:12
**spectacular** [1] - 24:21
**spell** [3] - 25:25, 26:1, 28:5
**SPRING** [2] - 2:6, 2:11
**standoff** [6] - 7:14, 8:3, 8:13, 11:4, 11:17, 20:10
**started** [2] - 4:17, 28:8
**state** [9] - 11:8, 15:6, 24:16, 25:24, 28:4, 28:13, 28:15, 29:5, 29:17
**STATES** [11] - 1:1, 1:7, 1:22, 2:4, 2:9, 31:5, 31:11, 31:13, 31:17, 31:20
**States** [2] - 4:5, 4:9
**station** [1] - 22:25
**stay** [4] - 8:22, 14:8, 30:4, 30:9
**STENOGRAPHICAL
LY** [1] - 31:14
**step** [2] - 13:13, 13:14
**still** [7] - 14:9, 17:4, 22:23, 26:13, 27:18, 27:19, 27:20
**stop** [1] - 29:16
**STREET** [3] - 1:23, 2:6, 2:11
**strokes** [1] - 19:3
**strongest** [1] - 15:15
**submission** [2] - 29:24, 30:11
**submit** [2] - 9:8, 13:8
**submitted** [2] - 7:4, 11:23

**success** [1] - 20:1
**suffering** [2] - 28:17, 29:11
**sufficient** [3] - 18:3, 18:19, 25:4
**suggesting** [1] - 23:7
**suggestion** [1] - 24:13
**suggests** [1] - 19:8
**SUITE** [2] - 1:23, 2:16
**sum** [1] - 8:14
**superior** [1] - 5:9
**supervised** [1] - 24:25
**supervising** [1] - 16:1
**supervision** [17] - 11:1, 11:15, 14:3, 15:3, 16:1, 16:9, 16:10, 16:11, 19:14, 21:11, 22:15, 24:9, 24:19, 25:1, 25:2, 25:3, 26:6
**support** [2] - 13:20, 13:22
**suppose** [1] - 16:12
**sureties** [4] - 6:5, 8:24, 16:3, 23:16
**surety** [1] - 13:20
**surreptitious** [3] - 14:11, 20:9, 20:13
**suspected** [1] - 12:1
**system** [3] - 17:19, 18:5, 24:22

**T**

**targeted** [1] - 14:13
**technically** [1] - 22:3
**ten** [1] - 20:10
**ten-minute** [1] - 20:10
**terms** [3] - 15:15, 23:18, 24:3
**terror** [1] - 28:19
**testifying** [2] - 20:22, 20:23
**text** [4] - 12:8, 12:17, 28:24, 28:25
**texts** [2] - 29:1, 29:4
**THAT** [2] - 31:12, 31:15
**THE** [63] - 2:4, 2:4, 2:9, 2:14, 4:4, 4:12, 4:16, 9:9, 9:12, 9:16, 11:5, 13:10, 14:21, 14:24, 17:5, 17:7, 17:10, 17:16, 17:17, 17:18, 17:21, 17:23, 18:1, 18:7, 18:16, 19:5, 19:7, 19:19, 21:14, 21:16, 25:7, 25:13, 25:15, 25:23, 25:24, 26:1, 26:3, 26:9, 26:16, 27:4, 27:10, 27:14, 27:17, 27:23, 27:25, 28:2, 28:4, 28:7, 29:22, 30:7, 30:10, 31:10,

31:11, 31:13, 31:14, 31:15, 31:16, 31:17, 31:19, 31:20
**themselves** [2] - 12:15, 20:2
**they've** [5] - 6:11, 6:24, 9:1, 15:22, 16:7
**third** [1] - 16:17
**THIS** [1] - 31:18
**threatened** [6] - 10:6, 10:13, 26:7, 26:11, 27:3, 27:11
**threats** [2] - 12:10, 12:19
**three** [2] - 4:5, 24:3
**THURSDAY** [2] - 1:18, 4:1
**tickets** [1] - 21:22
**ties** [1] - 9:23
**TITLE** [1] - 31:13
**TO** [1] - 31:12
**today** [5] - 4:11, 16:7, 24:7, 26:6, 28:12
**together** [1] - 24:8
**Torrance** [1] - 5:8
**track** [1] - 11:12
**traffic** [1] - 21:21
**TRANSCRIPT** [4] - 1:15, 31:14, 31:16, 31:18
**travel** [1] - 6:13
**tried** [1] - 19:24
**troubles** [1] - 19:12
**troubling** [3] - 14:10, 19:16, 20:16
**TRUE** [1] - 31:13
**true** [2] - 19:5, 23:11
**truly** [1] - 29:11
**try** [2] - 8:18, 8:19
**trying** [3] - 11:17, 26:22, 28:15
**two** [3] - 4:10, 8:23, 26:13
**type** [5] - 15:3, 16:9, 16:10, 20:11, 21:17
**types** [3] - 22:7, 22:18, 24:16

**U**

**unable** [1] - 6:2
**uncle** [6] - 6:5, 6:8, 8:24, 15:19, 23:23, 24:6
**under** [5] - 11:2, 14:6, 16:9, 29:24, 30:11
**undermined** [1] - 14:19
**underneath** [1] - 21:11
**understood** [1] - 19:21
**UNITED** [11] - 1:1, 1:7, 1:22, 2:4, 2:9, 31:5,

31:11, 31:13, 31:17, 31:20
**united** [1] - 4:5
**United** [1] - 4:9
**unless** [2] - 13:8, 29:23
**up** [6] - 8:8, 21:17, 23:16, 25:8, 25:16, 28:3
**upfront** [1] - 13:22
**useless** [1] - 18:23

**V**

**vehicle** [1] - 11:25
**victim** [4] - 10:21, 12:2, 12:22, 26:23
**victims** [21] - 4:10, 6:23, 10:3, 10:6, 10:9, 10:21, 11:22, 12:15, 12:24, 13:9, 14:12, 14:25, 16:18, 16:21, 20:21, 20:22, 20:25, 21:7, 25:7, 27:6, 27:10
**video** [1] - 10:13
**videos** [1] - 12:16
**view** [2] - 17:11, 17:17
**VIN** [2] - 28:25, 29:2
**violate** [5] - 17:24, 18:4, 18:22, 19:11, 24:22
**violated** [2] - 22:22, 23:8
**violates** [1] - 24:20
**violating** [1] - 23:6
**violation** [2] - 23:2, 24:13
**violations** [1] - 14:15
**violence** [2] - 7:25, 10:2
**violently** [1] - 10:5
**virtually** [1] - 19:10
**vs** [2] - 1:10, 31:6

**W**

**wait** [1] - 24:19
**warrant** [1] - 5:7
**warranted** [2] - 21:23, 22:5
**warrants** [1] - 5:11
**weaponry** [1] - 11:4
**weapons** [1] - 10:10
**wear** [1] - 22:21
**weight** [2] - 12:13, 13:4
**WEST** [1] - 1:23
**WESTERN** [1] - 1:3
**whatsoever** [1] - 11:10
**whereas** [1] - 16:2
**whole** [2] - 22:18, 29:14

**wife** [2] - 28:17, 29:2
**willing** [1] - 20:14
**Wilner** [4] - 5:6, 6:6, 7:5, 15:11
**Wilner's** [1] - 4:20
**window** [1] - 11:19
**windows** [1] - 11:18
**WITH** [2] - 31:16, 31:19
**WITNESS** [2] - 26:1, 27:10
**witness** [5] - 21:5, 25:10, 25:16, 25:21, 29:22
**witnesses** [1] - 15:14
**woken** [1] - 8:8
**worker's** [1] - 12:23
**written** [3] - 21:20, 22:4, 24:17

# Y

**Y-U-N** [1] - 26:2
**years** [6] - 10:1, 13:23, 14:16, 14:20, 21:2, 26:13
**Yoon** [1] - 28:23
**yourself** [1] - 15:8
**Yun** [1] - 26:1
**Yuwall** [1] - 17:8