1 Mark J. Werksman, Esq. (State Bar No. 120767)
2 Karen M. Sosa, Esq. (State Bar No. 269429)
  WERKSMAN JACKSON & QUINN LLP
3 888 West Sixth Street, Fourth Floor
4 Los Angeles, California 90017
  Telephone: (213) 688-0460
5 Facsimile: (213) 624-1942
6 Email: mwerksman@werksmanjackson.com

7
  Attorneys for Defendant
8 DAEKUN CHO

9
10                 UNITED STATES DISTRICT COURT
11               CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>DAEKUN CHO,<br><br>       Defendant | ) Case No.: 2:23-CR-00149-FMO<br>)<br>) **MEMORANDUM IN SUPPORT**<br>) **OF APPLICATION FOR**<br>) **RECONSIDERATION OF**<br>) **DETENTION ORDER**<br>)<br>) Hon. Fernando M. Olguin<br>) Courtroom: 6D<br>) Hearing Date: TBD |

**TO THE HONORABLE FERNANDO M. OLGUIN, UNITED STATES DISTRICT JUDGE, AND ASSISTANT UNITED STATES ATTORNEYS JENA MACCABE AND KEVIN BUTLER:**

Defendant Daekun Cho, by and through his counsel of record, hereby requests that this Court to reconsider its September 5, 2023, order denying Mr. Cho's application for review of the magistrate judge's order of detention. This application is made on the basis of two changes in circumstances. First, Mr. Cho's family can now secure a $1,000,000 bond with two properties; at the prior hearing,

1
**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER**

Mr. Cho could only propose a secured bond of $500,000. Second, Mr. Cho's prior counsel did not bring to the Court's attention a key issue that goes to his dangerousness to the community. That is, the weakness of the evidence identifying Mr. Cho as the assailant who attacked and carjacked Y.S. New counsel therefore applies for reconsideration on the basis of these changed circumstances.

This Court is already familiar with the procedural history of this case, so we will not belabor it here. In brief, Magistrate Judge Michael R. Wilner ordered Mr. Cho detained on the basis of danger to the community. On August 3, 2023, this Court heard Mr. Cho's Application for Review of Detention. On September 5, 2023, this Court issued a written ruling denying the application. (See ECF Doc. No. 47, Order Re: Application for Review of Detention Order.) On October 13, 2023, below signed counsel substituted in to represent Mr. Cho in this case.

In August, Mr. Cho proposed a $500,000 secured bond, secured by a property owned by his aunt and uncle. The aunt and uncle are now in a position to offer two properties: the home they live in and a second house. The total equity in these properties is over $1,000,000. This is a significant bail, appropriate for the seriousness of the charges before the Court. This doubling of the potential secured bond amount is both a significant change in circumstances as well as additional reassurance to the Court that Mr. Cho would not engage in dangerous behavior. Mr. Cho would reside with his aunt and uncle, and he would submit to electronic monitoring, home detention, and any other supervision mechanism the Court imposed. He has now been in custody almost eight months. He knows what federal custody is like, and he would not do anything to jeopardize not only his family's properties but also his freedom and risk remand before he has had his day in court.

In addition to the increased surety, Mr. Cho also wants to raise new issues discovered by new counsel, that were not raised at the last hearing. The Court continued Mr. Cho's detention based on Mr. Cho's "track record of using extreme violence to force his victims to comply with his demands." (Id. at 3.) The only act

2

**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER**

of violence that has been charged in this case is the assault against Y.S., who testified at the August 3, 2023, hearing. Mr. Cho's prior counsel did not raise for this Court a very real issue: that of the identity of the masked person involved in that assault. Mr. Cho vehemently denies that he participated in that attack.

In its ruling, the Court referred to "video of the defendant committing a carjacking." (Id. at 2.) There is video of a carjacking, but the assailants are utterly unidentifiable, and the video does not link Mr. Cho to the events therein. According to Y.S.'s statement, the assailant he believed to be Mr. Cho wore a mask over his face. There is nothing identifying in what the assailant said to Y.S.; the only reported statement by the assailant was "fuck him up." Had the assailant said something tending to identify him as Mr. Cho, for example, demanding his payment or referencing a prior conversation, the Government would have brought it to the Court's attention in its 23-page opposition. No such identifying statements are referenced there, nor in the Indictment nor Complaint in this matter.

The Government contends that "Shortly after the attack, defendant posted a photograph of himself on Instagram wearing the same skeleton mask." (ECF Doc. No. 39, "Government's Opposition to [] Application for Review/Reconsideration of Order of Detention [] ("Opposition") at 3-4.) First, nothing on the photograph indicates when it was posted. The vague assertion that it was posted "shortly" after the assault came from Y.S., not from investigation by a reliable federal agent. Second, there is no indication of when the photograph was *taken*; users can post any photograph from any time to their Instagram. Thus, there is no independent evidence linking this photograph to the assault.

 Third, the Government alleges that "law enforcement found matching skeleton masks at defendant's house." (Id. at 4.) This is not true. Compare the photograph purporting to be from Mr. Cho's Instagram account with Exhibit A, a photograph of the masks found at Mr. Cho's home which the Government chose not to include in its Opposition. The first thing that is clear is that these masks were

3
**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER**

brand new, still folded in plastic shrink-wrap when they were found. Law enforcement opened the packages and unfolded the masks to take photographs; the masks clearly had never been worn as they both have sharp creases. Closer examination of the teeth on the masks found in Mr. Cho's home reveals that these are not the masks depicted in the Instagram photo. Not only are these masks not the one shown in the Instagram photo, but they have also clearly never been worn. Therefore, the masks found in Mr. Cho's home do not link Mr. Cho to the assault.

Fourth, the Government contended that Mr. Cho "bragged about beating and carjacking Y.S." (Id. at 6.) The first reference is to a source who "personally heard Mr. Cho bragging about the incident." (ECF Doc. No. 1, Criminal Complaint, ¶ 39.) There is no detail about what Mr. Cho said, such as whether he claimed personal involvement in the incident or whether he heard about it afterward and was simply pleased that something bad happened to someone with whom he was squabbling. We do know it was not an "explicit admission," because the Government used that phrase in the very next paragraph of the Complaint referring to another statement attributed to Mr. Cho. If this "bragging" had been an admission, the Government would have said so.

The second reference to Mr. Cho "bragging" about the assault is even less clear. According to the Complaint, a witness claimed that "Cho referenced the assault" in order to get payment. (Id. at 50.) Referring to an incident that is well-known about in the community is a far cry from admitting responsibility for that incident. Mr. Cho has never admitted, directly or otherwise, involvement in the assault on Y.S. because he was not involved.

Interestingly, for a case that has a wealth of text messages purporting to show Mr. Cho flexing his muscle and intimidating drivers, there is not one message from Mr. Cho linking him to the assault against Y.S. In its Opposition, the Government stated, "Y.S. and J.L. began receiving threatening messages from an unknown number whom they believe to be defendant." (ECF Doc No. 39,

**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER**

Opposition at 4.) First, these messages came from an unknown number. There is no evidence linking this number to Mr. Cho. Second, the messages are undated. There is no independent evidence of whether they came before the assault, the day after the assault, or a year after the assault, weakening any asserted link between these messages and the assault. The messages do not reference the assault. The messages are to J.L., not Y.S., and make no mention of the Y.S. In short, these messages, the only ones the Government can point to as ostensibly linking Mr. Cho to the assault on Y.S., in fact are not probative of anything relevant to the Court's inquiry.

Mr. Cho's continued detention was largely based on his purported involvement in the assault on Y.S. Mr. Cho's prior counsel did not raise these very serious doubts as to whether Mr. Cho had any involvement in the assault against Y.S. Now that new counsel has reviewed the evidence and the record in this case, we believe that the Court would want to be made aware of these holes and revisit its prior ruling regarding detention.

Therefore, Mr. Cho now respectfully asks this Court to reconsider the detention order once more, in light of the additional collateral available to secure a bond of $1,000,000 and in light of the weaknesses in the Government's case not previously presented to the Court.

Dated: November 9, 2023

Respectfully submitted,

WERKSMAN JACKSON & QUINN LLP

By: _Mark Werksman_
_____

Mark J. Werksman
Karen M. Sosa
Attorneys for Defendant Daekun Cho

5

**MEMORANDUM IN SUPPORT OF APPLICATION FOR RECONSIDERATION OF DETENTION ORDER**

# EXHIBIT A



