E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JENA A. MACCABE (Cal. Bar No. 316637)
KEVIN J. BUTLER (Cal. Bar No. 329129)
Assistant United States Attorneys
Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5046/6495
     Facsimile: (213) 894-0141
     E-mail:    jena.maccabe@usdoj.gov
                kevin.butler2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DAEKUN CHO,<br>　aka "DK,"<br><br>　　　　Defendant. | No. CR 23-00149-FMO<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT DAEKUN CHO'S APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER OF DETENTION |

　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jena A. MacCabe and Kevin J. Butler, hereby files its opposition to defendant DAEKUN CHO's application for review/reconsideration of order of detention.

//

//

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 9, 2023            Respectfully submitted,

                                        E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

                /s/
JENA A. MACCABE
KEVIN J. BUTLER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

For years before his detention in this case, defendant DAEKUN CHO, also known as "DK," ("defendant") was extorting businesses and individuals in Koreatown, using violence to force his victims to comply with his demands.  Defendant now applies for the second time for reconsideration of his pretrial detention after two different Courts concluded that no release conditions could protect the community from defendant.

A detention hearing may be reopened only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f)(2).  The information in defendant's application was already known at the last hearing and, in any event, has no bearing on whether release conditions will reasonably assure defendant's appearance and the safety of the victims and the community.  The Court should reject his application.

**II.   DISCUSSION**

Defendant argues that there are two changed circumstances warranting his pretrial release now: (1) a $1,000,000 property bond from his uncle, and (2) arguments about the strength of the evidence showing that defendant carjacked Y.S.  Neither of those circumstances are new.  Nor do they materially bear on his risk of non-appearance and danger.  As such, defendant has failed to meet his burden under 18 U.S.C. § 3142(f)(2) to have yet another bail review hearing.

### A. Defendant Offers No New Information That Supports His Application

Defendant's proposed $1,000,000 bail was already available at the last hearing. According to the Pretrial Services report, his uncle was "willing to assist the defendant with a property bond for 'whatever amount possible,'" which presumably included all the property that he owned. To the extent the offer was limited to his uncle's primary residence, however, defendant fails to explain why his uncle would not have offered both properties previously. In any event, as prior defense counsel argued at the last hearing, defendant's violation of his release conditions would result in significant and immediate punishment for his family (his aunt and uncle) to lose their home. He also argued that if defendant's aunt and uncle helped him, they would be charged with a crime (and, at one point, counsel argued that they would lose their citizenship). Accordingly, this $1,000,000 bail proposal is not new information warranting yet another hearing.

Defendant's "new argument not presented by prior counsel" is likewise not new information unavailable at the last hearing. Defendant argues that the sole act of violence that he is charged with committing is the carjacking of Y.S., which apart from being untrue, is not "new" in that the charges against defendant have not changed since the last hearing. His argument that the videos of the carjacking do not identify the assailants, again, is not "new." The government submitted those videos before the last hearing. Defendant fails to explain why he did not make those arguments at the last hearing. Thus, he has not shown why his arguments entitle him to a new hearing for bail.

### B. Defendant's Proposed Bail and Arguments Do Not Materially Bear on Whether He Should Be Released

As discussed in the government's prior oppositions (Dkt. 26, 39), a significant property bond is insufficient to warrant pretrial release. See Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984 U.S.C.A.N. 3182, 3198-99 (n.60) (Congress finding that "a defendant who is a danger to the community remains dangerous even if he has posted a substantial money bond"); see, e.g., United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (affirming district court's denial of proposed $600,000 secured bail package based on risk defendant posed to the community). Increasing the amount of such bond from $500,000 to $1,000,000 does not change anything. According to prior defense counsel at the last hearing, defendant was proposing the strictest release conditions. Nevertheless, Pretrial Services told the Court that they are unable to supervise defendant because Pretrial Services supervision is not custody. The government vehemently agrees and so did both Courts when they detained him.

Defendant's arguments about the carjacking footage likewise do not change anything. The victim of the carjacking, Y.S., knew defendant well before he attacked Y.S. on May 8, 2021. Since July 2019, defendant had been extorting and threatening Y.S. (See Compl. ¶¶ 25-27, Dkt. 1.) Some examples of their interactions, including the dash camera footage from Y.S.'s car (defendant saying, "I need my money," "This my shit, bro," "You not going anywhere, bro," "Did you call cops?" and "Do you want to fight me or something?") and

defendant's text messages,[1] were submitted with the government's last opposition.  (See Decl. of Jena A. MacCabe ("MacCabe Decl.") ¶¶ 6-7, Dkt. 39; see also Compl. ¶ 35 (discussing Y.S. receiving threatening text messages after the carjacking).)  The sworn affidavit in the complaint explained that Y.S. "immediately identif[ied]" defendant as the carjacker "by the rest of [defendant]'s face that was visible to Y.S. [beyond the skeleton mask] and [defendant]'s voice."  (Compl. ¶ 28.)  Defendant posting the photo on social media of himself in the mask "shortly after" the carjacking (id.)[2] was simply corroborative of Y.S.'s identification of defendant, not necessary to prove that defendant was the carjacker.  Defendant had the motive to carjack Y.S. too, and the beating was consistent with defendant's violent scheme to force his victims to comply with his demands.  (See, e.g., MacCabe Decl., Ex. 23-24 (defendant's outgoing text messages looking for S.S. and later admitting to beating up S.S. because "We have rules"); Compl. ¶¶ 45-47 (describing defendant's beating of D.E., footage of which has been produced to defendant at bates 008205-8207).)

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's application for release.  If this

---

[1] Although defendant tries to challenge the threatening messages that Y.S. received (Dkt. 60-1 at 5), the government has produced numerous messages that defendant sent his victims, including the threats from a known number at bates 004676, which was produced pursuant to the protective order issued in this case.

[2] Contrary to defendant's application, the "assertion that it was posted 'shortly' after the assault came from Y.S.," which was "investigat[ed] by a reliable federal agent."  (Compare Dkt. 60-1 at 3, with Compl. ¶ 28 (federal agent's affidavit stating that defendant posted the photo to his social media account shortly after the incident).)

4

Court is inclined to grant bail, the government respectfully requests that this Court either (1) stay its bail order pending appeal per Federal Rule of Appellate Procedure 8(a)(1)(A), or (2) order continued detention pending a government appeal per 18 U.S.C. § 3143(c).