E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JENA A. MACCABE (Cal. Bar No. 316637)
KEVIN J. BUTLER (Cal. Bar No. 329129)
Assistant United States Attorneys
Violent and Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5046/6495
     Facsimile: (213) 894-0141
     E-mail:    jena.maccabe@usdoj.gov
                kevin.butler2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>DAEKUN CHO,<br>   aka "DK,"<br><br>           Defendant. | No. CR 23-00149-FLA<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO GRAPE STREET CRIPS<br><br>Trial Date:   March 19, 2024<br>Hearing Date: March 1, 2024<br>Hearing Time: 2:00 p.m.<br>Location:     Courtroom of the<br>              Hon. Fernando L.<br>              Aenlle-Rocha |
|---|---|

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jena A. MacCabe and Kevin J. Butler, hereby files its Opposition to defendant DAEKUN CHO's Motion in Limine to Exclude Evidence Relating to Grape Street Crips.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 22, 2024            Respectfully submitted,

                                              E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


                   /s/
JENA A. MACCABE
KEVIN J. BUTLER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.   INTRODUCTION.......................................................1

II.  STATEMENT OF FACTS.................................................1

     A.   Defendant Claimed He Was Affiliated with GSC to Make
          His Victims Fear Him..........................................1

     B.   Los Angeles Police Department Officer Jacob C. Rice
          Would Testify as an Expert about GSC..........................2

III. ARGUMENT...........................................................3

     A.   Defendant's Affiliation with GSC Is Relevant..................3

     B.   Rule 403 Does Not Warrant Exclusion...........................7

     C.   If Defendant Tries to Challenge Officer Rice's
          Qualifications to Be an Expert, the Court Should
          Reject It.....................................................8

IV.  CONCLUSION.........................................................9

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

United States v. Alatorre,
 222 F.3d 1098 (9th Cir. 2000) ...................................... 8

United States v. Alviar,
 573 F.3d 526 (7th Cir. 2009) .................................... 3, 4

United States v. Archuleta,
 737 F.3d 1287 (10th Cir. 2013) ..................................... 8

United States v. Coppola,
 671 F.3d 220 (2d Cir. 2012) ........................................ 5

United States v. Fazio,
 770 F.3d 160 (2d Cir. 2014) .................................. 5, 7, 8

United States v. Fazio,
 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012) ........................... 7

United States v. Ford,
 761 F.3d 641 (6th Cir. 2014) ....................................... 4

United States v. Freeman,
 498 F.3d 893 (9th Cir. 2007) ....................................... 6

United States v. Gaines,
 859 F.3d 1128 (8th Cir. 2017) ...................................... 4

United States v. Gomez,
 6 F.4th 992 (9th Cir. 2021) ........................................ 5

United States v. Gomez-Norena,
 908 F.2d 497 (9th Cir. 1990) ....................................... 9

United States v. Hankey,
 203 F.3d 1160 (9th Cir. 2000) ...................................... 8

United States v. Johnson,
 735 F.2d 1200 (9th Cir. 1984) ...................................... 6

United States v. Mulder,
 273 F.3d 91 (2d Cir. 2001) ......................................... 5

UnitedStates v. Nelson,
 2021 WL 75757 (N.D. Cal. Jan. 8, 2021) ............................. 9

United States v. Santiago,
 46 F.3d 885 (9th Cir. 1995) ........................................ 5

United States v. Thomas,
 86 F.3d 647 (7th Cir. 1996) ........................................ 4

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Valencia-Amezcua,
    278 F.3d 901 (9th Cir. 2002) ....................................... 6

United States v. Vallejo,
    237 F.3d 1008 (9th Cir. 2001) ...................................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant DAEKUN CHO, also known as "DK," ("defendant") has for years extorted businesses in Koreatown using violence and intimidation to force his victims into submission. If his victims refused to pay or disobeyed his orders, he would violently attack them. Through his retribution, defendant cultivated a violent reputation to spread fear across the industry so that victims would comply with his extortion demands.

Defendant also weaponized his alleged affiliation with the Grape Street Crips ("GSC") to instill further fear in his extortion victims. He advertised that association to convince his victims (truthfully or not) that he had gang members for "muscle." While defendant and the government agree that he "answered to no one" (Mot. 4, Dkt. 66), his position as boss does not make that affiliation inadmissible. To the contrary, his reputed affiliation with GSC helped him maintain his status and keep his victims paying him for years.

**II.   STATEMENT OF FACTS**

   **A.   Defendant Claimed He Was Affiliated with GSC to Make His Victims Fear Him**

Defendant represented himself to his victims as an affiliate of GSC. According to Y.S., defendant appeared to be using GSC members as his muscle to help him collect extortion payments.

On social media, defendant displayed more subtle references to GSC. For instance, in the first photograph below, defendant is the individual on the top left displaying a GSC hand sign and wearing

purple.  "PRM" is short for Peda Roll Mafia, a subset of GSC.  The account name includes "loc," which is short for Love of Crip.



B.  **Los Angeles Police Department Officer Jacob C. Rice Would Testify as an Expert about GSC**

If permitted, Los Angeles Police Department Officer Jacob C. Rice would testify at trial that the Eastside Grape Street Watts Crips (GSC, GST, WBLC, GSW) are a predominantly African American street gang located in the Watts neighborhood of Southeast of Los Angeles, California, specifically in and around the Jordan Downs Public Housing.  GSC members and associates have different racial

2

backgrounds, including Asian descent.  GSC members wear purple, perform hand signs, and get tattoos to show their affiliation with the gang.

GSC is involved in murders, robberies, extortions, and carjackings, among many other violent criminal activities.  GSC engages in protection rackets or schemes to promise to protect other organizations or individuals from violent crime so long as the organization or individual makes regular payments.  Such payments may be referred to as a protection fee or tax.  These schemes may mimic the structures and methods used by legitimate tax authorities to collect taxes from taxpayers.

By charging the so-called "protection fees," GSC members are essentially offering to refrain from attacking the victims themselves.  The gang collects these payments by the wrongful use of actual or threatened force, violence, or fear.  The victims recognize that they may be physically harmed if they refuse to pay.  If the victims do refuse to pay, GSC members retaliate with violence, many times resulting in the victims agreeing to comply with the payment demands.

GSC's protection schemes are successful in part because they occur where the victims do not trust law enforcement to adequately protect them based on their distrust of law enforcement, engagement in illegal or unregulated activities themselves, or language and cultural barriers.

**III. ARGUMENT**

    **A.   Defendant's Affiliation with GSC Is Relevant**

In each of defendant's cited cases (see Mot. 4-5), the Circuits explained that gang evidence is admissible if relevant.  See United

3

1  States v. Alviar, 573 F.3d 526, 536-38 (7th Cir. 2009) (admitting
2  gang evidence to prove drug trafficking conspiracy); United States v.
3  Ford, 761 F.3d 641, 649-50 (6th Cir. 2014) (same in conspiracy to
4  commit armed robberies); United States v. Gaines, 859 F.3d 1128, 1133
5  (8th Cir. 2017) (admitting "evidence of [defendant]'s gang
6  affiliation only as an important contextual explanation and as
7  evidence of [defendant]'s motive to possess a firearm").  For
8  example, the Seventh Circuit has held that "[g]ang affiliation is
9  particularly relevant, and has been held admissible, in cases where
10 the interrelationship between people is a central issue."  Alviar,
11 573 F.3d at 536 (quoting United States v. Thomas, 86 F.3d 647, 652
12 (7th Cir. 1996)).  The Sixth Circuit agrees.  See Ford, 761 F.3d at
13 649 ("Evidence of gang affiliation is relevant where it demonstrates
14 the relationship between people and that relationship is an issue in
15 the case, such as in a conspiracy case." (citation omitted)).  Here,
16 that "interrelationship" is the victims' relationship with defendant
17 based on fear.
18     Relatedly, the Eighth Circuit has held that "photographs of [a
19 defendant]'s gang-related clothing and tattoos were . . . probative
20 of [his] motive to possess a gun 'even if that alleged motive derived
21 from his gang involvement.'"  Gaines, 859 F.3d at 1132 (quotation
22 omitted).  Although not cited by defendant, the Ninth Circuit has
23 held that gang evidence such as "evidence relating to the Mexican
24 Mafia is admissible 'as proof of motive, opportunity, intent,
25 preparation, [or] plan'" under Rule 404(b) but also as direct
26 evidence of a crime where, for example, the "gang links" led to "the
27 procurement of the murder weapon and to the planning of the crime."
28

United States v. Santiago, 46 F.3d 885, 889 (9th Cir. 1995).[1]  Here, defendant's affiliation with GSC made his extortion scheme successful both through what he learned from how GSC extorts people and through his dangerous reputation of having GSC members to help him violently attack his victims.

Specifically, in this case, evidence of defendant's affiliation with GSC is direct evidence of his extortion in that he advertised that affiliation to instill fear in his victims.  "[W]here an organized crime enterprise cultivates a reputation for violence and intimidation in achieving its conspiratorial goal of control throughout an industry or area, a jury may reasonably consider that reputation in assessing whether payments were induced by the exploitation of existing fear without an explicit or implicit threat."  United States v. Coppola, 671 F.3d 220, 242 (2d Cir. 2012) (citing United States v. Mulder, 273 F.3d 91, 103-04 (2d Cir. 2001)).  Moreover, "whether [a defendant was] actually connected to organized crime is not dispositive of the admissibility of reputation evidence that tends to show the reasonableness of the victims' fear.  The government may use the evidence to demonstrate that a victim's belief that the [defendant was] connected to organized crime was reasonable and that the [defendant] exploited this belief."  United States v. Fazio, 770 F.3d 160, 165 (2d Cir. 2014) (admitting evidence of

---

[1] The Ninth Circuit has also admitted gang-affiliation evidence "under Rule 405(a), as evidence about [defendant]'s reputation and character" to rebut an entrapment defense.  United States v. Gomez, 6 F.4th 992, 1005-06 (9th Cir. 2021).  Although defendant has not noticed an entrapment defense, the government respectfully reserves its right to introduce this evidence under any Federal Rule of Evidence which may apply come trial.

defendants' alleged connection to the mafia in Hobbs Act extortion case).

Defendant's GSC affiliation would be alternatively admissible under Rule 404(b). Defendant's mere claim to be associated with GSC would be admissible to prove his intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Indeed, by claiming that association, he was intimidating his victims, and as Y.S. confirmed, portraying himself as having gang members for muscle if his victims did not pay.

With respect to expert testimony about GSC, contrary to defendant's argument (see Mot. 5), Officer Rice's proposed testimony is not too generic or common knowledge to be helpful to the jury.[2] Specifically, Officer Rice can describe the color GSC wears and hand signs GSC performs, which the jury will be able to compare to defendant's social media posts.

Additionally, "[g]overnment experts may testify as to the general practices of criminals to establish the defendants' modus operandi which helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Freeman, 498 F.3d 893, 906 (9th Cir. 2007) (citations omitted); see also United States v. Johnson, 735 F.2d 1200, 1202 (9th

---

[2] Additionally, the government need not charge defendant with conspiracy to introduce expert testimony about a criminal organization. See United States v. Valencia-Amezcua, 278 F.3d 901, 909 (9th Cir. 2002) ("[Defendant] erroneously argues that our decision in United States v. Vallejo, 237 F.3d 1008 (9th Cir.2001), amended by 246 F.3d 1150 (9th Cir.2001), requires in every case the exclusion of expert testimony on the structure of drug organizations where, as here, the defendant is not charged with conspiracy. [Defendant] misreads Vallejo and is wrong because Vallejo expressly approved admissibility of modus operandi testimony.").

Cir. 1984) (citing cases).  Because the government expects defendant to argue that his victims were paying him to protect them, rather than for extortion, Officer Rice should be permitted to testify that GSC, with which defendant claims he is associated, represents their extortion demands as "protection fees."  He should be permitted to explain how these protection schemes work, including that GSC promises to protect its victims from violent crime so long as the victims make regular payments, but that GSC is essentially just offering to refrain from attacking the victims themselves.  He should also be able to testify about how these schemes are successful in part because GSC targets victims who do not trust law enforcement to adequately protect them based on their general distrust of law enforcement, engagement in illegal or unregulated activities themselves, or language and cultural barriers.  Accordingly, Officer Rice's testimony will help the jury understand exactly how defendant's extortion scheme worked, why his victims feared him, and where he learned and perfected that scheme from in the first place.

**B.   Rule 403 Does Not Warrant Exclusion**

Defendant argues that "Crips" is "a label universally associated with the worst of gang violence, fear, and victimization." (Mot. 6.) Perhaps that is why defendant claimed to his victims that he was associated with them.  As discussed above, in extortion cases, it is very probative for victims to testify about the defendant's alleged connection with organized crime, explaining the basis for their fear, and non-victim witnesses to explain the defendant's general reputation. See, e.g., United States v. Fazio, No. S2 11 CR 873 KBF, 2012 WL 1203943, at *4 (S.D.N.Y. Apr. 11, 2012), aff'd, 770 F.3d 160 (2d Cir. 2014).  "Accordingly, while statements connecting the

7

[defendant] to [organized crime like] the mob are prejudicial, that prejudice does not outweigh the probative value of the evidence." Id.

Nor does Rule 403 warrant exclusion of expert testimony about GSC. Defendant does not cite a single case in support of such. Cf. United States v. Archuleta, 737 F.3d 1287, 1292-96 (10th Cir. 2013) (discussing at length defendant's Rule 403 concerns about gang expert testimony and rejecting them).

### C. If Defendant Tries to Challenge Officer Rice's Qualifications to Be an Expert, the Court Should Reject It

Defendant has not challenged Officer Rice's qualifications to testify as an expert on GSC generally. Even if he subsequently does, however, such challenge should fail.

Testimony by law enforcement experts is generally deemed reliable where the witness demonstrates that his opinion is based on substantial "knowledge and experience" and/or "specialized training" in the conduct of criminal enterprises. See United States v. Hankey, 203 F.3d 1160, 1169-70 (9th Cir. 2000); United States v. Alatorre, 222 F.3d 1098, 1104 (9th Cir. 2000). The proposed expert testimony regarding GSC's extortion methods falls squarely within the realm of expert testimony based on "street intelligence," which is admissible under Rule 702, and is highly instructive in a case involving allegations that defendant told his victims that he was affiliated with GSC and that defendant used GSC's methods to extort his victims. Hankey, 203 F.3d at 1169-70 (explaining that testimony based on "street intelligence" of law enforcement witnesses that comes with years of experience and "day-to-day police activity" is covered by Rule 702, and upholding admission of testimony from police gang

8

expert regarding the repercussions for testifying against an affiliated gang member; reliability established through witness's "experience and special knowledge" working with gangs, rather than methodology or theory); see also United States v. Gomez-Norena, 908 F.2d 497, 501 (9th Cir. 1990) (expert testified as to distribution quantity of drugs "based on his four years' experience involving over 200 narcotics arrests"); United States v. Nelson, No. 17-CR-00533-EMC-1, 2021 WL 75757, at *9 (N.D. Cal. Jan. 8, 2021) ("As Hankey and related decisions repeatedly emphasize, law-enforcement expertise 'depends heavily on the knowledge and experience' of the officer, rather than on the kinds of factors that Daubert enumerated for scientific testimony (e.g., peer review, testability, etc.)." (citation omitted)).

**IV.   CONCLUSION**

    For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion.

9