Mark J. Werksman, Esq. (State Bar No. 120767)
Karen M. Sosa, Esq. (State Bar No. 269429)
WERKSMAN JACKSON & QUINN LLP
888 West Sixth Street, Fourth Floor
Los Angeles, California 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942
Email: mwerksman@werksmanjackson.com
Email: ksosa@werksmanjackson.com

Attorneys for Defendant
DAEKUN CHO

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAEKUN CHO, <br><br> Defendant. | CASE NO. 2:23-CR-149-FLA <br><br> **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT UNCHARGED ACTS** <br><br> Date: March 1, 2024 <br> Time: 2:00 p.m. <br> Courtroom: 6B |

  The Government filed two motions in limine seeking to admit evidence of uncharged acts by Mr. Cho. The first motion (ECF Doc. No. 67) seeks admission of this evidence on the grounds that it is inextricably intertwined with the charged offenses. The second motion (ECF Doc. No. 68) seeks admission of this evidence under Rule 404(b). Mr. Cho hereby opposes both motions on the grounds that (1) the evidence does not satisfy the requirements of these respective doctrines and (2) the evidence runs afoul of Rule 403.

1

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT UNCHARGED ACTS**

Alongside the presumption of innocence, one of the fundamental hallmarks of the American justice system is the prohibition against the use of attacks on a defendant's character to establish guilt, or to indicate a propensity for committing crimes.[1] It is well established that this type of evidence has the tendency to lead the jury "to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States* (1948) 335 U.S. 469, 475−476. It has been consistently proven that juries employ a much harsher standard when judging defendants with a criminal past. The type of evidence most consistently rated damning and prejudicial to a jury's determination was "evidence suggesting immoral conduct by the defendant." (Teitelbaum, et al., *Evaluating the Prejudicial Effect of Evidence* (1983) Wis. L.Rev. 1147, 1162.)

While the Court can instruct the jury that other acts evidence is not by itself sufficient to prove a defendant guilty of the charged crimes, this evidence remains undeniably powerful, tipping the scale heavily in favor of a conviction based on the jury's perception of the defendant's character. Even when this evidence is carefully limited, it still has the strong potential to overwhelm the actual evidence regarding the charged offense. As discussed below, the Court should consider whether admission of any of the proffered evidence would be unduly and overwhelmingly prejudicial.

### I.   The Uncharged Acts are not Inextricably Intertwined

Evidence of other acts is admissible as "inextricably intertwined" only if (a) it constitutes a part of the transaction that serves as a basis for the criminal charge or (b) it is *necessary* to permit the prosecutor to offer a coherent and comprehensible story regarding the charged crime. The Government's motion

---

[1] *Michelson v. United States* (1948) 335 U.S. 469, 475−476; *Greer v. United States* (1918) 245 U.S. 559; 1 Wigmore, Evidence (3d ed., 1940) section 57; 1 Wharton, Criminal Evidence (11th ed., 1935) section 330.

relies on this second condition, arguing that without this evidence, the jury may have questions about the evidence before them. However, the standard is not whether the evidence helps the Government's case. Of course it does. The standard for the admission of this extrinsic evidence is whether it is *necessary* to present a coherent story regarding the charged offenses. The Government's case as to the extortions of Y.S., J.L., and S.S., as well as the carjacking of Y.S., is coherent and comprehensive without the admission of the other act evidence.

The Government argues that these other acts show why Y.S., J.L, and S.S. complied with Mr. Cho's demands and that they paid not to protect themselves from an outside threat but to protect themselves from Mr. Cho. However, the timeline does not support this. The Indictment alleges extortion of Y.S. in November and December 2020, of J.L. in January and February of 2021, and of S.S. beginning in December 2020. By contrast, all but one of the "other acts" post-date the charged acts by years. The shooting occurred in July, 2022. The assault against D.E. occurred in September, 2022. The extortion of Y.K. did not begin until March of 2022. The extortion of K.Y.J. began at the same time as the charged extortions, in December 2020. The text messages the Government included in their motion concerning "extortion of other victims" are dated October and December 2022. And Mr. Cho's actions at the time of his arrest occurred in 2023.

The named victims had paid or had been paying Mr. Cho many months prior to the uncharged acts. The extortion of Y.S. (Counts 1 and 2), the carjacking of Y.S. (Count 34), and the extortion of J.L. (Counts 3 and 4) all occurred about a year or more prior to the "other acts" evidence except the extortion of K.Y.J., which began simultaneously with the extortion of Y.S. and J.L. Likewise, the extortion of S.S. began at the same time, about a year or more prior to the "other acts" evidence except the extortion of K.Y.J., which began simultaneously with the

3
**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT UNCHARGED ACTS**

extortion of Y.S., J.L., and S.S. The Government charged the ongoing extortion of S.S. as Counts 5 through 32, and of those charges, Counts 5 through 20 all occurred prior to the shooting, the assault of D.E., and the extortion of Y.K.

Whatever the named victims' reasons for paying Mr. Cho, it could not have been because of acts that occurred thereafter. And it certainly cannot be said to be "inextricably intertwined" with acts that occurred years thereafter.

Furthermore, even leaving aside the anachronistic timing, the fact that other individuals, such as K.Y.J, Y.K., and the unidentified "other victims," paid Mr. Cho is not *necessary* in order for the Government to prove whether Y.S., J.L., and S.S. paid out of threatened force, violence, or fear of injury. To the extent that other people also paid Mr. Cho is probative of issues before the jury, it would only be under 404(b). But whether or not this evidence is *probative* is not the test for admissibility as inextricably intertwined evidence. The standard here is whether it is *necessary* in order for the Government to present a coherent and comprehensive version of events, and clearly it is not. Y.S., J.L., and S.S. will all testify that they paid because Mr. Cho threatened violence, and the Government will present text messages from Mr. Cho to support that. They will testify that they paid because they wanted to be able to access the karaoke clubs that Mr. Cho "controlled," and the Government will present text messages and testimony to support that. S.S. will testify that he knew about the assault of Y.S. for non-payment, and that that is part of why he continued to pay Mr. Cho, in addition to the reasons he started in the first place. The Government's case will be complete and coherent from the evidence of the charged acts. The evidence of the other acts *is* extricable from the charged acts, and therefore the Court should not admit it on this basis.

//

//

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT UNCHARGED ACTS**

## II. The Requirements of FRE 404(b) are Not Met

The Government argues that all of the uncharged acts are admissible under Rule 404(b) to show Mr. Cho's motive, state of mind, plan and preparation, and identity. However, this argument does not succeed as to all of the uncharged acts. The shooting, if proven to have been committed by Mr. Cho, bears no meaningful similarity to the carjacking or the extortion so as to credibly prove identity or state of mind as to those charged instances. "This showing of similarity is necessary because if the other act is not sufficiently similar to the crime charged, it does not tell the jury anything about what the defendant intended… unless, of course, one argues (impermissibly) that the [other] act establishes that the defendant has criminal propensities." *United States v. Preston* 873 F.3d 829 (9th Cir. 2017.)

Similarly, the assault of D.E. in September 2022 is not probative of a material issue, nor does it go to a permissible purpose under 404(b). The proposed evidence about D.E. from September 2022 is not probative of Mr. Cho's state of mind regarding the extortions of Y.S., J.L., or S.S. nor the carjacking of Y.S., all of which started two years prior to the assault of D.E. Of course, the Government wants to present to the jury evidence of Mr. Cho assaulting D.E. because it makes it more likely that he assaulted S.S. and Y.S. But that is exactly what Rule 404(b) means by prohibiting evidence offered "to prove the character of a person in order to show that he acted in conformity therewith."

Furthermore, the shooting and the assault of D.E. also fail to meet the requirement under 404(b) that there be sufficient evidence of the uncharged acts. At best, the evidence of the shooting is that Mr. Cho was angry that J.K. brought doumi to On and Off Karaoke. Mr. Cho spoke with J.K. about it. After an hour in the karaoke club, the doumi got back in the van and they drove away. Someone shot at the van with a revolver. Despite there being surveillance video and two witnesses who knew Mr. Cho standing right near where the shooting occurred, there is neither video nor eyewitness testimony that putting Mr. Cho at the location

at the time of the shooting. Mr. Cho's cell phone pinged several blocks away, which is not probative; there is no dispute that Mr. Cho was in Koreatown that night, as he was many nights. Mr. Cho heard about the shooting and called the manager of On and Off to find out what was going on. Despite agents finding many guns in Mr. Cho's house, none of them was the gun involved in this shooting. And contrary to the Government's argument that Mr. Cho boasted about his acts of violence in order to encourage compliance, Mr. Cho never admitted to this shooting because he did not commit it.

To prove this incendiary accusation, the Government's witness list proposes calling only one witness, R., to testify for 15 minutes about this incident. Likewise, they propose not D.E. but M.M. to introduce blurry, silent video of an alleged assault. Mr. Cho asks that the Court hear from the Government as to how R. and M.M. alone are going to prove that these uncharged acts were committed by Mr. Cho to a standard sufficient to satisfy 404(b).

### III.   The Evidence Should Be Excluded Under Rule 403

Even where evidence of other acts is admissible as "inextricably intertwined" or under Rule 404(b), the evidence must still survive a Rule 403 balancing test. *U.S. v. Miller*, 874 F.2d 1255, 1268 (9th Cir. 1989.) "The evidence may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant." *State of Ariz. v. Elmer*, 21 F.3d 331, 336 (9th Cir. 1994.)

As discussed above, the other acts evidence is of limited relevance or probative value due to their temporal relationship with the charged acts, the weakness of the evidence supporting some of the other acts, and the otherwise minimal connection to the charged acts. "Relevance is a fairly coarse filter, and when evidence is minimally relevant, it is likely to be minimally probative as well. Moreover, a decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question. . . . And, as we

have noted: Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *U.S. v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012) (internal citations omitted.)

      The Court must therefore balance the first factor, the probative value of the evidence, against the time-consuming nature of the evidence and the probability of undue prejudice from the evidence. If the Government presents enough evidence of the uncharged acts to satisfy 404(b)'s sufficiency requirement, these additional acts will sidetrack this Court into a series of mini trials on collateral incidents, unduly consuming the Court's time. The charged acts alone involve three victims and 34 counts. Through their other acts evidence, the People seek to introduce another six or seven witnesses and evidence of a shooting, an assault, an extortion lasting six months, an extortion lasting over a year, however many extortions they intend to present through their unnamed other victims, as well as testimony about Mr. Cho's conduct at arrest. Of the 10-hour estimate for the Government's witnesses, a clear four hours of it would be consumed solely by other acts witnesses. On top of that, some portion of their witnesses testifying about Mr. Cho's cell phone contents and about Mr. Cho's cell phone location will be about these other acts. It is not an exaggeration to say that about half of the Government's extremely conservative time estimate will be consumed by this other acts evidence. Cross-examination of these witnesses will of course add to this time expenditure, and the defense may call additional witnesses to counter these allegations. Furthermore, this evidence will require additional instructions and occupy more time in argument. Notably, all of this court time will be spent on evidence ostensibly to prove facts that are already proven by the evidence of the charged acts.

      In sum, the other acts evidence is not just overkill, there are so many alleged uncharged acts that hearing this evidence will result in doubling the trial length to

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT UNCHARGED ACTS**

prove facts that are not at issue. In light of the foregoing, the Court should exclude all of the proposed uncharged acts evidence.

Second, the Court should exclude testimony regarding uncharged acts that are more despicable or egregious than the charged offenses. The evidence of the shooting falls squarely within this prohibition. There is no evidence of gun violence against any of the charged victims. By contrast, the evidence regarding the shooting will be that Mr. Cho fired a gun at an occupied car, striking a young woman – an innocent victim in his feud with the driver – in the neck. That is a significant escalation from the evidence that will otherwise be before the jury, and the Court should not admit it. Although less of an escalation, the evidence of the assault against D.E. is evidence of Mr. Cho personally inflicting bodily harm on someone. Admitting the evidence of this assault against D.E. adds to the aura of Mr. Cho as a dangerous man who violently hurts those who disobey him. This prejudicial effect overpowers any purported probative value, especially when coupled with the fact that this assault occurred after almost all of the charged acts.

By their charging decisions, the Government will already have the benefit of three separate witnesses testifying that Mr. Cho extorted them. Introducing evidence of a fourth, fifth, and unknown "other" extortion victims provides no additional probative value to the jury. Rather, it is cumulative. "The district court has considerable discretion even with admittedly relevant evidence in rejecting that which is cumulative." *U.S. v. Elksnis* 528 F.2d 236, 239 (9th Cir. 1975.)

Similarly, the evidence of Mr. Cho's reaction to his arrest is also cumulative and of minimal probative value. First, the Government overstates its evidence that "the defendant attempted to flee" and that authorities apprehended him "after an extended standoff." The investigators' report says that Mr. Cho opened a bathroom window, "appeared he was getting ready to lift himself up to jump out," but did not. Looking out one's window when one's house is surrounded by law enforcement at 4:00a.m. is not evidence of flight. The report further states that

agents detained Mr. Cho at 4:08, approximately eight minutes after law enforcement's arrival. By no measure is that an "extended standoff." This evidence is of limited probative value to the offenses charged. There were numerous illegal firearms and other contraband in Mr. Cho's house, Mr. Cho is not a United States citizen, and Mr. Cho had been working for years in a "gray market" business. There are any number of reasons he did not welcome federal agents into his home, and any connection to the charged offenses is pure speculation.

Furthermore, the evidence of Count 33 will include testimony from S.S. and law enforcement agent(s) about Mr. Cho's desire to escape detection by law enforcement. That is the meeting that law enforcement monitored, during which the Government alleges that Mr. Cho took evasive action such as changing the location of the meeting, asking S.S. if he called the police, and cancelling their meeting. Mr. Cho did not want to encounter law enforcement *in connection with the charged acts*. The evidence of the charged acts establishes that directly. Evidence of Mr. Cho's actions at the time of his arrest is superfluous to that evidence and is only relevant "to show criminal disposition," an impermissible use of other acts evidence. *United States v. Lewis* 837 F.2d 415, 419 (9th Cir. 1982).

### IV. Conclusion

For the forgoing reasons, Mr. Cho respectfully requests that the Court deny the Government's motions.

DATED: February 23, 2024

Respectfully submitted,

WERKSMAN JACKSON & QUINN LLP

By: _____
Mark J. Werksman
Karen M. Sosa
Attorneys for Daekun Cho

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT UNCHARGED ACTS**