E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JENA A. MACCABE (Cal. Bar No. 316637)
KEVIN J. BUTLER (Cal. Bar No. 329129)
Assistant United States Attorneys
Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5046/6495
    Facsimile: (213) 894-0141
    E-mail:   jena.maccabe@usdoj.gov
                kevin.butler2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-00149-FLA |
|---|---|
| Plaintiff, | GOVERNMENT'S *EX PARTE* APPLICATION FOR ORDER COMPELLING DEFENDANT TO PERMIT PHOTOGRAPHING OF TATTOOS; DECLARATION OF JENA A. MACCABE |
| v. | |
| DAEKUN CHO, aka "DK," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jena A. MacCabe and Kevin J. Butler, hereby applies ex parte for an order compelling defendant DAEKUN CHO to permit photographs to be taken of any and all tattoos located anywhere on his body.

//

//

This application is based upon the attached memorandum of points and authorities, the attached declaration of Jena A. MacCabe, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 8, 2024      Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


          /s/
JENA A. MACCABE
KEVIN J. BUTLER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendant DAEKUN CHO ("defendant") is proceeding to trial on March 19, 2024, on charges of Hobbs Act extortion and carjacking. To rebut the anticipated defense that defendant's victims were paying him to protect them, rather than as extortion, the government seeks to introduce evidence of defendant's relationship with the Grape Street Crips ("GSC"). Multiple victim witnesses will testify that they paid him, in part, because defendant told them, or they knew his reputation that, he was involved with GSC. The government's expert witness will also explain how GSC's protection schemes work, including that GSC promises to protect its victims from violent crime so long as the victims make regular payments, but that GSC is essentially just offering to refrain from attacking the victims themselves. He will also testify about how these schemes are successful in part because GSC targets victims who do not trust law enforcement to adequately protect them based on their general distrust of law enforcement, engagement in illegal or unregulated activities themselves, or language and cultural barriers. From this evidence and others, the jury will learn exactly how defendant's extortion scheme worked, why his victims feared him, and where he learned and perfected that scheme from in the first place.

Some of the government's witnesses have shared defendant's social media posts broadcasting his relationship with GSC. Law enforcement further believes that defendant may have a GSC tattoo. Through this application, the government respectfully asks the Court to issue an order requiring defendant to permit government agents or Bureau of Prisons ("BOP") staff to take photographs of any of his

tattoos.  As set forth below, the compelled exhibition of tattoos is non-testimonial, and therefore, defendant has no right to refuse to permit photographs to be taken of his tattoos.  Photographs of any GSC tattoos will directly rebut defendant's argument that "[t]here is no evidence that Mr. Cho has any tattoos identifying him as a member of GSC."  (Def.'s Mot. in Limine to Exclude Evid. Relating to Grape Street Crips 2, Dkt. 66.)

**II.   FACTUAL BACKGROUND**

Defendant represented himself to his victims as an affiliate or member of GSC to make them fear him so that they would continue paying his extortion demands.  According to victim Y.S., defendant appeared to be using GSC members as his muscle to help him collect extortion payments.  Victims K.Y.J. and Y.K. likewise heard that defendant was involved with a gang.  Victims Y.S. and J.L., and likely many others, also saw countless photographs on defendant's Instagram more subtly referencing GSC with hand signs, terminology, and clothing, among other references.  (See Gov.'s Opp'n to Def.'s Mot. in Limine to Exclude Evid. Relating to Grape Street Crips, Dkt. 70.)

**III. ARGUMENT**

Defendant has no constitutional right to refuse to permit photographs to be taken of his tattoos.  The Fifth Amendment privilege against self-incrimination only protects an accused "from being compelled to testify against himself or otherwise to provide . . . evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761 (1966).  The compelled display of "identifiable physical characteristics," however, is not testimonial or communicative in nature, and therefore does not

2

infringe the privilege against self-incrimination.  <u>United States v. Dionisio</u>, 410 U.S. 1, 5-6 (1973).  As the Supreme Court has explained:

> Both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, <u>photographing</u>, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.

<u>Schmerber</u>, 384 U.S. at 764 (emphasis added); <u>see also</u> <u>Gilbert v. California</u>, 388 U.S. 263, 266-67 (1967) ("The privilege [against self-incrimination] reaches only compulsion of an accused's communications, whatever form they might take . . . and not compulsion of real or physical evidence . . . .  A mere handwriting exemplar, in contrast to the content of what is written, like the voice or <u>body itself</u>, is an identifying characteristic outside [the Fifth Amendment's] protection." (emphasis added; internal quotation marks and citations omitted)).  As Justice Holmes explained:

> the prohibition of compelling a man to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body when it may be material.

<u>Holt v. United States</u>, 218 U.S. 245, 252-53 (1910).  Thus, courts have routinely compelled an accused to provide fingerprints, blood samples, voice exemplars, handwriting samples, to stand in a line-up, to wear particular clothing, and to submit to photographs.  <u>See, e.g.</u>, <u>Dionisio</u>, 410 U.S. 1 (voice exemplars); <u>Gilbert</u>, 388 U.S. 263 (handwriting exemplars); <u>Schmerber</u>, 384 U.S. 757 (blood samples); <u>United States v. Martinez, et al.</u>, CR 14-338(A)-SJO, Dkt. No. 2026

(order granting the government's request to photograph tattoos and take fingerprints of defendants awaiting trial in a RICO matter).[1]

With respect to tattoos, the Ninth Circuit has held that a defendant may be compelled to display his hands with their distinctive tattoos to the jury without subjecting himself to cross-examination precisely because the display of tattoos is non-testimonial and the government could compel it:

> [A] display of hands is non-testimonial.  This has been repeatedly held in cases in which the government seeks to compel a defendant to show various types of physical characteristics to the jury.  The cases hold that this does not infringe the Fifth Amendment privilege against self-incrimination.[2]

United States v. Bay, 762 F.2d 1314, 1315 (9th Cir. 1984) (citing Dionisio, Schmerber, Holt, and United States v. Valenzuela, 722 F.2d 1431, 1433 (9th Cir. 1983)); see also Chavez v. Compton, 2010 WL 231359, at *2 (D. Mont. Jan. 20, 2010) (finding "no basis upon which to bring a Fifth Amendment claim as the display of [the defendant's] tattoos were non-testimonial"); Free v. Culliver, 2007 WL 2069841, at *11 (M.D. Ala. Jul. 17, 2007) (same).

Indeed, courts in this district have routinely granted the government's motion to take photographs of defendants' tattoos in racketeering cases based on the reasons set forth in this application.  See, e.g., United States v. Rios, No. 2:22-CR-00020-PA,

---

[1] While the grand jury could have subpoenaed the photographs, fingerprints, handwriting exemplars and the like, these items are often obtained by means of court order before trial.  See, e.g., United States v. Lincoln, 494 F.2d 833, 836, 838-39 (9th Cir. 1974) (affirming compulsion of handwriting exemplars shortly before trial).

[2] Nor would it violate defendant's Fourth Amendment rights.  See Dionisio, 410 U.S. at 8-16 (compelling voice exemplars does not violate Fourth Amendment); United States v. Mara, 410 U.S. 19, 21-22 (1973) (same for handwriting exemplars).

Dkt. 281 (July 7, 2023); United States v. Loza, No. 2:16-CR-00390-DSF, Dkt. 3749 (Jan. 17, 2020); United States v. Loza, No. 2:16-CR-00390-PA, Dkt. 2146 (Oct. 1, 2018).  Given the disputed issues in defendant's trial, he should be ordered to do the same.

**IV.  CONCLUSION**

    For the forgoing reasons, defendant should be ordered to permit government agents or BOP staff to take photographs of any and all tattoos on his body.

5

**DECLARATION OF JENA A. MACCABE**

I, Jena A. MacCabe, declare as follows:

1. I am an Assistant United States Attorney for the Central District of California and am one of the attorneys responsible for prosecuting the case of United States v. Daekun Cho, CR 23-00149-FLA.

2. On March 8, 2024, I communicated with defense counsel via email and informed them that the government would file an ex parte application for an order compelling defendant to allow photographs of his tattoos. Counsel said they do not oppose provided that the photographer capture all tattoos and body parts, besides intimate body parts. The government will ask the photographer to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on March 8, 2024.

/s/
JENA A. MACCABE